ELISHA CHAMBERS v. THE STATE.
JNO. WALL v. THE STATE.

It is within the power of the legislature to repeal a definite portion of a section or article in an act, without the re-enactment of the section or article, omitting the part repealed. Such mode of repealing does not conflict with the 25th section of the 7th article of the State constitution.

The act of 12th February, 1858, amending the Penal Code, uses the words "provisions to Art. 411," in the repeal of the proviso to that article. The mistake in the language is obvious, and the proviso to the article is repealed, leaving the other portions of it unaffected by the repealing clause.

APPEAL from Colorado. Tried below before the Hon. George W. Smith.

Indictment for playing at a game with cards at a certain house for retailing spirituous liquors, on the 1st day of November, 1859. It was proved by defendant's admissions that he played at the game with cards at the time and place charged in the indictment. There was no proof that anything was bet on the game.

The defendant asked the court to instruct the jury that if the game of cards was played for amusement or recreation, there was no offence committed, and they should acquit; which the court refused, and charged them that playing at the game for amusement or recreation did not constitute a defence.

Defendant was convicted. The case of Wall v. The State presents the same questions, and the opinion applies to both cases.

*Harcourt & Robson*, for the appellant.—We think the charge of the court was erroneous, because it was based upon the supposition that the proviso of Art. 411, Penal Code, was repealed.

We insist that there has been no constitutional amendment of Art. 411, because sec. 25, Art. 7, of the constitution, provides that, "No law shall be revised or amended by reference to its title; but in such case the act revised, or section amended, shall be re-enacted and published at length." Article 411 was attempted to be revised and amended by a sweeping repealing clause con-

tained in section 2, at the end of the act of 12th February, 1858, amending the Penal Code in the following words, to-wit :

" The following articles and portions of articles of the Penal Code are hereby repealed, to-wit," and after enumerating twelve articles by their number or title, it proceeds : " and the provisions to Art. 411," &c. To have made the amendment conform to the requirements of the constitution, the Art. 411 should have been " re-enacted and published at length," omitting the portion intended to be repealed. We presume there can be no play upon the words section and article. They are synonymous terms. Webster says, " In laws a section is sometimes called a paragraph or article." (Webster's Dictionary.) But if we are wrong in the position assumed as to the unconstitutionality of the repealing section referred to, we contend that the "proviso" in Art. 411 has never been repealed. The words of this repealing section are, that " the provisions to Art. 411 be repealed," &c., not the "proviso." Whatever may have been the intention of the legislature, the language employed is plain and unmistakable. Now, what are the " provisions" to Art. 411 ? The 5th definition of provisions given by Webster, is " the special enactments of a statute." The same author defines " proviso " to be " an article or clause in any statute, agreement, contract or other writing, by which a condition is introduced." Bouvier, in his Law Dictionary, under the title " Proviso," says : " A proviso differs from an exception. An exception exempts absolutely from the operation of an enactment ; a proviso defeats their operation conditionally." If, then, Webster is correct in defining "provisions " to be the enactments of a statute ; and if he and Bouvier are correct in defining " proviso " to be a condition attached to an enactment of a statute, the conclusion is irresistible that the enacting portion of Art. 411, which precedes the " proviso," must contain the " provisions " to the article which are repealed, and that the " proviso " still remains in full force. But it may be contended that the repeal of the " provisions to Art. 411," embraced in that portion of the article which precedes the " proviso," must necessarily, by implication, work a repeal of the " proviso " also ; or, in other words, if the enactment is expressly repealed, the condition to the enactment

must be impliedly repealed. In reply, we say: 1st. That the language of the repealing section, which repeals twelve entire articles of the Code, and only the "provisions to Art. 411," shows clearly that it was not the intention of the legislature to repeal the "proviso;" and, 2d, it will be found by reference to the Code that the "provisions" or enacting clause of Art. 411, might well be repealed, and still the "proviso" could remain as a condition to the enactments of Arts. 409 and 410. In Art. 409, the offence of gaming at cards is fully defined; the simple playing of a game at cards, whether for money or for amusement, at any of the places designated in that and the succeeding article, is made an offence. There was then no necessity for the "provisions to Art. 411," for they followed necessarily from the provisions or enactments of the preceding articles, and it is certainly more reasonable to suppose that the legislature intended to repeal those provisions to that article as surplusage, than to suppose that they intended to repeal the "proviso" to that article by the use of a term which, according to the authorities we have quoted, and to the plain import of the English language, means, when applied to a law or statute, anything else but proviso. The legislature which passed the repealing section referred to, must, with Art. 411 before them, have known what they intended to repeal, for that article commences thus: "Upon the trial of any person accused of offending against the 'provisions' of the two preceding articles," &c. The two preceding articles are 409 and 410, in which there is not a solitary proviso, for they contain nothing but enactments or provisions. There is but one proviso to Art. 411, and if it was intended to repeal it, the plain term "proviso," in the singular number, would have been employed.

But if it should be held that we are wrong in our construction of the law, then we insist that the repealing section referred to is inoperative and void, because it is obnoxious to Art. 6 of the Penal Code, which declares that, "whenever it appears that a provision of the penal law is so indefinitely framed, or of such doubtful construction that it cannot be understood, either from the language in which it is expressed, or from some other written

law of the State, such penal law shall be regarded as wholly in-operative."

*Attorney General*, for the appellee.—The repealing section of the "act supplementary to and amendatory of an act entitled an act to adopt and establish a Penal Code," &c., approved February 12, 1858, declares that "the following articles and portions of articles of the Penal Code are hereby repealed, to wit: Article 77, 78, 593," &c., "and the provisions to Article 411," &c.

The first question to be noticed is, does the section quoted, so far as it purports to repeal the proviso to Art. 411 of the Penal Code, conflict with the 25th section of the 7th Art. of the State Constitution, which declares that "no law shall be revised or amended by reference to its title, but in such case the act revised or section amended, shall be re-enacted and published at length."

The solution of this question depends on the meaning of the constitutional provision quoted, and in order to ascertain the meaning of the provision quoted, we must ascertain the object intended to be secured by it. The debates of the convention that framed the constitution are silent upon the subject, but the provision itself was taken from the Louisiana constitution, and the decisions of the Supreme Court of that State might well be taken as good authority in determining the question. In the case of Walker v. Caldwell, 4 La. Annual Rep., 297, the objects intended to be secured by the provision are defined, and if that case may be relied upon as authority, it is very clear that the repealing clause in question can in no way come in conflict with the consti-tution. It was simply intended to keep together all the law pas-sed by the legislature on a given subject, so as to be easy of access and intelligible to all, and to prevent different portions of the same article or section from being scattered through the acts of the different sessions of the legislature. But it may be said that as the repeal of a proviso to an article is an alteration of the article, *pro tanto*, it must therefore be an amendment of the article and included by the terms of the provision in question. With the same propriety it may be said that as every part of the

Chambers v. The State.

Penal Code is a part of one entire system of laws, the repeal of any one of its articles is an alteration or amendment of the whole, and therefore obnoxious to the constitution. The distinction between a repeal of a law, or portions of it, and an amendment, is defined with reference to the very provision under discussion in the case of the Commercial Bank of Natchez v. Markham, 3 La. Annual Rep., 698, and is a case directly in point.

In that case it was decided that the statute of June 1st, 1846, which declares " that so much of Art. 746 and 747 of the Code of Practice, as authorizes a creditor having obtained a judgment in another State of the Union, or in a foreign country, to proceed to executory process on said judgment, be and the same is hereby repealed, does not violate Article 119 of the constitution, which provides that ' no law shall be revised or amended by reference to its title, but in such case the act revised or section amended shall be re-enacted and published.' " In the course of the opinion the court say that " Art. 119 does not include by its terms the repeal of laws, or portions of them, and can only be thus extended by an implication of doubtful propriety." They further say that " we cannot declare that an act repealing certain defined portions of an article of one of our codes, is in conflict with this article."

This case is submitted as conclusive upon the point in controversy.

ROBERTS, J.—We think there is no error in this case. Because—1st. It is within the power of the legislature to repeal a definite portion of a section or article in an act, without the re-enactment of the section or article, omitting the part repealed. (Commercial Bank of Natchez v. Markham, 3 La. Annual Rep., 698.)

2d. The repealing clause of 1858 uses the words " provisions to Art. 411" of the Penal Code, by mistake, for the words "proviso to" said article. That there is a mistake in the language used is most obvious. There is but one provision in the article, except that contained in the proviso, and that is to dispense with the necessity of proving that money or valuable things were bet upon the game played. It did hardly design to repeal the whole

Article; for if so it would have been designated by its number simply as the other articles. The true meaning of the clause can not, therefore, be arrived at by giving effect to its literal import.

If we must resort to construction then, what object could have been intended to have been obtained by repealing the provision of the 411th Article? The two preceding sections would mean the same thing and require the same proof with or without that provision. The offence created by them was playing at a game with cards in certain places, not betting on such game. It would not have been necessary to have proved that money or other valuable articles were bet upon such game, had this provision of Art. 411 never been inserted. It was the declaration of a legal consequence, and it was inserted only for the purpose of attaching to it in the shape of a proviso, a modification or qualification beneficial to the defendant. Its recital was made the principal to which the proviso was the incident. The repeal of this recital would not alter the legal consequence flowing from the two preceding Articles to which it related. The proof of the betting of money or other valuable articles would still have been unnecessary. We should not readily suppose that the legislature intended to do a thing so useless and unmeaning. The proviso furnished a fruitful source of evasion and perplexity in the execution of the law prohibiting gaming. It contained a new provision in our law on the subject of gaming. The body of the Article 411 did not. An important and beneficial result might be anticipated from the repeal of the proviso, and none whatever from the repeal of the body of the article. This consideration, it is believed, can leave but little doubt but that they intended to repeal the proviso and leave the body of the Article standing in force as an express declaration of a legal consequence. The only purpose to be accomplished by leaving it standing, was to prevent the misconstruction which might possibly have arisen from its repeal, as to the necessity of the proof of betting.

The language used, "provisions *to*," adds greatly to the force of this conclusion. The appropriate mode of expression would have been " the provision *of*," or "Art. 411, *except the proviso*," had it been intended to repeal the body of the article and leave

the proviso standing. We think it is clear, notwithstanding the mistake in using the word "provisions," that the legislature intended to repeal the provisos to Article 411, and that they have expressed that intention in a manner, though not strictly accurate, yet not calculated to mislead.

Judgment affirmed.