## SCALES v. STATE.

1. SABBATH BREAKING: *Indictment for.*

An indictment for Sabbath breaking which charges that the defendant " on the third day of May, 1885, said day being Sunday, unlawfully was found *laboring* and performing other services, the same not then and there being of household duty, of daily necessity, comfort or charity," charges the offense in the language of the statute and is sufficient to apprise the defendant of the nature of the charge against him, and to enable him to prepare his defense and to plead the judgment in bar of a second prosecution against him for the same offense.

2. SAME: *Repeal of Section 1886, Mansf. Dig., constitutional.*

The act of March 2, 1885, repealing Section 1886, of Mansf. Dig., is not in violation of any provision of the constitution; and since the repeal no person is

Scales v. State.

excused for laboring or performing other prohibited service on the Christian Sabbath by observing some other day as the Sabbath agreeably to the faith and practice of his church or society. All persons, without regard to religious faith or practice, are now prohibited from labor or other service on Sunday, which is not of household duty, of daily necessity, comfort or charity.

3.   THE SABBATH LAW:   *A civil regulation.*

The Sabbath statute is essentially a civil regulation providing for a fixed day of rest in the business, the ordinary avocations and amusements of the community. It imposes upon no one any religious ceremony, or attendance upon any form of worship, and leaves every one to the religious observance of any day he may deem suitable or appropriate.

APPEAL from *Washington* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*J. D. Walker* for Appellant.

1.   The indictment did not sufficiently declare the facts constituting the offense, or meet the requirements of the law. *2 Hale, 169; 6 East., 239; Cowp., 672; art. 2, sec. 10, const; 1 Ark. 171.* It did not set out the *facts,* so that the defendant— if convicted—could plead in bar of another prosecution. 11 *Ohio, 282; 1 Du Val, 90, 160.*

2.   *Sec. 1886, Mansf. Dig.,* is *not repealed* by the act of March, 1885, and the persons embraced in the exception are still entitled to its benefits. Appellant by the evidence has brought himself: *First,* within that exception; *secondly,* within the provisions of *art. 2, sec. 24, const. Ark.;* and *thirdly,* within *14th amendment const. U. S.*

The law in regard to Sabbath breaking was "*extended*" to a class not embraced by the statute as it existed prior to the act of 1885, and it could *not* be so extended unless "so much thereof as is revived, amended, *extended* or conferred, is *re-enacted* and *published at length.*" There is no pretense of a re-enactment of Sec. 1883, nor is it published at length, but

Sec. 1886 is simply *repealed by title.* This could not be done. *Art. 5, sec. 23, const.; 31 Ark., 239.*

. 3. The law, without the exceptions contained in Sec. 1886, is unconstitutional and void; it denies appellant *the equal protection of the law,* guaranteed him by the constitution, and gives others a *preference* over him, necessitating him to refrain from labor *two* days in each week. *Art. 2, sec. 24, const. Ark.; 14 amend. const. U. S.; slaughter house cases, 16 Wall., 109.*

*Dan. W. Jones,* Attorney General, for Appellee.

The appellant was convicted of laboring on the Sabbath. The indictment was in the language of *Section 1883 of Mansf. Dig.,* and was sufficient, although it did not charge the particular kind of labor performed. The following cases are analogous in principle: *State v. Anderson, 30 Ark., 131; State v. Hutson, 40 Ib., 361; State v. Moser, 33 Ib., 140; 41 Ark., 226; 39 Ib., 216.* The appellant knew that the charge he had to meet was laboring on the Sabbath, and that was sufficient to put him on his guard. No question was made as to the sufficiency of the indictment by demurrer, but it was raised by motion in arrest, after verdict and after the evidence had shown the kind of labor done. If there was really a defect it was cured before the question was raised. *See rule of Sergeant Williams in Stephen on Pleading, 1 star p. 149.* Sec. *1886, Mansf. Dig.,* was repealed in express terms. *Acts 1885, 37.* Sec. *23, art. 5, cons.* does not contain the word " repeal," and evidently does not require that a section repealed and completely excised should be reprinted. Its object was to have any amendments and additions placed in the act just as the legislature desired the whole to appear.

The Sunday law in no way militates against either *sec. 24, art. 2, const. Ark., or the 14th amendment to the const. of U. S. First,* it does not compel any person to worship anything, or

attempt to interfere with the free exercise of conscience, nor does it give a preference to any sect or denomination; it prohibits, without any exception, any and all classes from laboring on the Sabbath, and is as general in its application as the law relative to murder or any other crime. It is a police and not an ecclesiastical regulation. *Swann v. Swann, by Caldwell J., 21 Fed. Rep., 299.* *Second,* it does not seek to deprive any one of life, liberty or property, but makes its infraction a penal offense which is enforced by "due process of law." The appellant is not compelled to labor on Saturday, nor does his conscience and religion require him to labor on Sunday, therefore, the law is obnoxious to neither of the constitutions. *Shover v. State, 10 Ark., 259; Brittin v. Ib., 229.*

COCKRILL C. J. This is an appeal from a conviction for "Sabbath breaking." The sufficiency of the indictment was questioned by a motion in arrest of judgment. The particular act that constitutes the alleged offense is not set out. The indictment charges merely that the defendant "on the 3d day of May, 1885, the said day being Sunday, unlawfully was *found laboring* and performing other services, the same not then and there being of customary household duty, of daily necessity, comfort or charity."

The language of the statute which creates the offense is employed in the indictment, and nothing more is required in a statutory misdemeanor when the general language of the statute is sufficient to apprise the defendant of the nature of the accusation against him. *Glass v. State, 45 Ark., 173; State v. Snyder, 41 Ib., 226; State v. Hutson, 40 Ib., 361; State v. Witt, 39 Ib., 216.*

We cannot say that the indictment is insufficient under this rule, but think that the defendant would be enabled to prepare his defense and plead the judgment in bar of a second prosecution for the same offense. *Emmerson v. State, 43 Ark., 372.*

II. The statute under which this conviction was had comes to us from the Revised Statutes of 1838. It contained this provision, which was carried forward into the revision of 1884 as *Section 1886*, viz.: " Persons who are members of any religious society who observe as Sabbath any other day of the week than the Christian Sabbath or Sunday shall· not be subject to the penalty of this act, so that they observe one day in seven agreeably to the faith and practice of their church or society." But in 1885, before the commission of the offense charged in the indictment, the legislature passed an act the only part of which that is material to this prosecution is as follows : " That Section 1886 of Revised Statutes of Arkansas be and the same is hereby repealed." *Acts of 1885, p. 37.*

The proof showed that the appellant was found painting a church on a Sunday. He offered to prove that he was a member of a religious society known as the Seventh Day Baptists, one of the tenets of which is the observance of Saturday as the Sabbath instead of Sunday, and that he had regularly refrained from all secular work and labor on Saturday agreeably to his religious faith and that of his church.

It is argued that the court erred in rejecting this testimony because, as it is said, first, the effort to repeal *Section 1886* was ineffectual ; and second, that if it was not, the law, without the exception made by that section, gives a · preference to other religious denominations over that of the appellant, within the meaning of *Section 24* of *Article 2* of the *State Constitution*, which providest hat " No preference shall ever be given by law to any religious establishment, denomination or mode of worship above any other ;" and moreover denies to him the equal protection of the law, within the meaning of the federal constitution.

The argument against the repeal of *Section 1886* is based upon the idea that if the law is read without that provision the penalty of the statute is "extended" to the appellant without a re-enactment of the law, and that such a method of legislation

is prohibited by the following provision of the constitution, viz:
" No law shall be revised, amended, or the provisions thereof
extended or conferred by reference to its title only, but so
much thereof as is revived, amended, extended or conferred,
shall be re-enacted and published at length." *Section 25, Art.
5, Const.*

It will be observed that the provision does not in terms pro-
hibit the repeal of a law by reference to its title, and the pro-
hibition can be extended by implication only. The power of
the legislature is not to be cut off by inference save where the
inference is too strong to be resisted. *Vance v. Austell, 45
Ark., 400.* We look to the constitution not to see whether
power is granted but to ascertain if it is withheld, and when
there is a doubt as to the existence of a power, it must be re-
solved in favor of the legislative action.

It is well settled that this provision does not make it neces-
sary, when a new statute is passed, that all prior laws modified,
affected or repealed by implication by it should be re-enacted.
If we should so hold a large part of the laws of this state
would have to be re-enacted and republished at every session
of the legislature, and some of them many times over. No
human foresight or diligence could determine the extent of the
alteration and modification that would be effected by the acts
of a single session, and if it could it would not then prevent
the necessity of the re-enactment and republication biennially
of almost the entire body of the statute law. To make the
provision mean that would be an absurd construction, and it is
the reasonable construction the provision should receive with
a view to giving it the effect intended by its framers. The
mischief designed to be remedied by a constitutional provision
nearly the same in effect as this one was pointed out by this
court in the case of *Perkins v. DuVal, 31 Ark., 236,* and may
be found more elaborately stated in *Cooley's Constitutional
Limitations, *p. 151,* and cases there cited. What is com-

30——47

plained of as an evil here is not laid down as such in any case to which we have been referred.

If the legislature had undertaken to amend *Section 1886* the provision under consideration would have required the section as amended to be set forth *in extenso*, and the old section, upon the passage of the new one, would have been repealed, if not expressly, then by implication. *State v. Ingersoll, 17 Wis., 631.* In that event there would have been no necessity for re-enacting the other parts of the chapter in which the section is found. When there is an express repeal of the section, without a substitute for or an amendment to it, what greater necessity is there for re-enacting the other sections that are affected only incidentally by the repeal?

The section has been repealed and the chapter is intact without it. *Commercial Bank v. Markham, 3 La. Ann., 698; Chambers v. State, 25 Texas, 307; State v. Ingersoll, supra; Sedgwick Const. of St. and Const. Law., 2 ed., p. 532.*

III. The constitutionality of this law as originally enacted has been repeatedly affirmed by this court in both civil and criminal cases. *Shover v. State, 10 Ark., 259; State v. Anderson, 30 Ark., 131; Tucker v. West, 29 Ib., 386; Merritt v. Robinson, 35 Ib., 483.*

No reference was ever made to the exception contained in *Section 1886*, for the purpose of maintaining its validity, and we are cited to no case or authority where the view is entertained that the failure to make the exception in favor of those who faithfully observe a different day as their Sabbath will render the law invalid. The supreme court of California expressed that view in 1858 over the dissent of Judge Stephen J. Field (*ex parte Newman, 9 Cal., 502*), but the dissenting opinion was afterwards adopted by the court as the correct exposition of the law (*ex parte Andrews, 18 Cal., 678*), and the validity of the statute has ever since been maintained in that state. *Ex parte Bird, 19 Cal., 130; ex parte Koser, 60 Ib., 177.*

The validity of similar statutes has been affirmed elsewhere against repeated assaults, and in Louisiana it has even been held that a municipal ordinance which forbade the sale of goods on Sunday, but excepted from its operation those who kept their places of business closed on Saturday, was in the teeth of the constitution, in that it gave to the Saturday observer a privilege denied to others. *City of Shreveport v. Levy, 26 La. Ann., 671.* But the legislative enactments of most of the states preserve to those whose religious faith impels them to keep holy a different day from Sunday, the right to keep Sunday as a secular day, if not to the full extent given under our statute before the act of 1885, at least to do so in such a manner as not to disturb those who observe that day, and the acts in either form, whether making a full and free exception of the observer of other days, or none at all, are held to be a valid exercise of legislative power.

The reasons that are commonly given for sustaining these acts are briefly stated by Judge Devens, in a recent Massachusetts case, in these words:

"It is essentially a civil regulation, providing for a fixed period of rest in the business, the ordinary avocations and the amusements of the community. If there is to be such a cessation from labor and amusement, some one day must be selected for that purpose, and even if the day thus selected is chosen because a great majority of the people celebrate it as a day of peculiar sanctity, the legislative authority to provide for its observance is derived from its general authority to regulate the business of the community and to provide for its moral and physical welfare. The act imposes upon no one any religious ceremony or attendance upon any form of worship, and any one who deems another day more suitable for rest or worship, may devote that day to the religious observance which he deems suitable or appropriate. That one who conscientiously observes the seventh day of the week may also be

Scales v. State.

compelled to abstain from business of the kind expressly
forbidden on the first day, is not occasioned by any subordina-
tion of his religion, but because as a member of the
community he must submit to the rules which are made by
lawful authority to regulate and govern the business of the
community." *Commonwealth v. Has, 122 Mass., 40.* See
too *Cooley's Const. Lim.,* \*476–7*; Desty's Cr. Law, sec. 117 a and
cases cited; Frolickstein v. Mayor of Mobile, 40 Ala., 725;
Gabel v. City of Houston, 29 Tex., 335; Swann v. Swann, 21
Fed. Rep., 299; Parker v. State, (Sup. Ct. Tenn., 1886.) 1 S. W.
Rep., 202; Specht v. Com., 8 Penn. St., 312, and cases cited supra.*

It is said that every day in the week is observed by some
one of the religious sects of the world as a day of rest, and if
the power is denied to fix by law Sunday as such a day, the
same reason would prevent the selection of any day; but the
power of the legislature to select a day as a holiday is every-
where conceded.   This state, from the beginning, has appropri-
ated Sunday as such.   On that day the business of our courts
and public offices has always been suspended, (*Mansf. Dig.,
sec. 1483*); the issuance and service of legal process prohibited;
presentment and notice of dishonor of commercial paper not
allowed (*Ib., sec. 465*); and the performance of an act in exe-
cution of a contract which matures upon Sunday postponed to
the next day. *L. R. & Ft. S. Ry. v. Dean, 43 Ark., 529.* This
observance of Sunday as a day of refrainment from secular
business has always been required of the people generally,
without reference to creed, and they continue to so observe it
without complaint that, as a municipal institution, it violates any
of their constitutional or religious rights.   The principle which
upholds these regulations underlies the right of the state to
prescribe a penalty for the violation of the Sunday law.   The
law which imposes the penalty operates upon all alike, and in-
terferes with no man's religious belief, for in limiting the pro-
hibition to secular pursuits it leaves religious profession and
worship free. *Ex parte Newman, supra.*

The appellant's argument, then, is reduced to this; that be-cause he conscientiously believes that he is permitted by the law of God to labor on Sunday, he may violate with impunity a statute declaring it illegal to do so. But a man's religious belief can not be accepted as a justification for his committing an overt act made criminal by the law of the land. *Reynolds v. U. S., 98 U. S., 145.*

If the law operates harshly, as laws sometimes do, the rem-edy is in the hands of the legislature. It is not the province of the judiciary to pass upon the wisdom and policy of legisla-tion—that is for the members of the legislative department, and the only appeal from their determination is to their con-stituency.

Affirm.