KAUFMAN v. CARTER.

PARTNERSHIPS—CONSTRUCTION OF STATUTES.—The act, Code, 1902, 1705,
     providing that "every mercantile partnership, in addition to a proper
     sign-board or place containing the name and style of the firm, shall
     post up and keep posted up in some conspicuous place at the business
     stand or stands of the firm the names and surnames of each member
     of the firm," on pain of paying 50 dollars for each month in default
     at suit of any citizen, applies *only* to limited partnerships.  Rules of
     construction of statutes stated.

Before WATTS, J., Oconee, November, 1902.    Affirmed.

Action by Otto Kaufman against John Carter and W. J.
Neville.    From order sustaining demurrer, plaintiff appeals.

*Messrs. J. R. Earle* and *H. J. Haynsworth,* for appellant,
cite: Code, 1902, 1705; 6 Wall., 395; 1 Black., 88; Code,
1902, 1706, 1707, 1683, 1684, 1688, 1689, 1692, 1696.

*Messrs. Stribling & Herndon,* contra.    *Mr. Herndon*
cites: Code, 1902, 1680 to 1707; 53 S. C., 456; 6 Stat., 581;
11 Stat., 388; Black on Int. of Laws, 31; 19 Ency., 2 ed.,
362.

August 14, 1903.    The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS.    The complaint in this action
alleges that the defendants, John Carter and W. J. Neville,
conducted a mercantile business at Walhalla, as copartners
under the firm name of Carter & Company, from January
1st, 1899, to January 1st, 1901, "without posting up and
keeping posted up a proper or conspicuous sign-board or
plate, containing the name and style of the firm at the busi-
ness stand of the firm, and without posting up and keeping
posted up in any conspicuous place at the business stand and
stands of the firm the given and surname of each member of
the firm, in violation of section 1326 of the General Statutes

of South Carolina of 1882." The plaintiff claims by reason of this default he is entitled to recover as a penalty from each of the members of the firm individually $50 per month for twenty-four months, and demands judgment for $1,200 against Carter and for the same sum against Neville.

The defendants demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action, in that it fails to charge the partnership alleged in the complaint was a limited partnership. The Circuit Judge sustained the demurrer, and the appeal involves the correctness of this ruling.

The section under which the action is brought is as follows: "Every mercantile partnership in this State, in addition to a proper or conspicuous sign-board or plate containing the name and style of the firm, shall post up and keep posted up in some conspicuous place at the business stand and stands of the firm the given and surname of each member of the firm, under pain, in case of default, of being sued and proceeded against, without naming the individual members of the firm, and also of forfeiting and paying, individually and each, the sum of fifty dollars, to any one who shall sue for the same, for each and every month they shall make such default as aforesaid. Every person conducting any business as agent shall post up, and keep posted up, in like manner, the name of his or her principal, under the like penalty." General Statutes, 1882, section 1326. Revised Statutes, 1893, section 1432.

The sole question is, whether this section applies to all partnerships, or to limited partnerships only. If this provision of law had been enacted as a separate statute, there would be no place for discussion, for its language is broad enough to embrace all partnerships, general and limited. The connection in which the section stands, and the history of the particular statute of which it forms a part, make the question one of much gravity and interest, and seem to justify a somewhat tedious statement.

The original statute was enacted in 1837, VI. Stat., 581.

It was entitled "An act to authorize the formation of limited partnerships," and consisted of twenty-seven sections, every section except the twenty-fourth, which is the section now under consideration, and the last, which only limits the period in which the act was to be enforced, clearly and unmistakably relating to the formation and conduct of limited partnerships. The precautions necessary for the protection of the special partners from general liability and of the public from being misled as to the extent of their liability, are laid down in great detail. The General Assembly has never seen fit to enact any general law on the subject of partnerships, being content, no doubt, with the common law on the subject as interpreted by the courts of the State. The title and the general purpose and scope of this act even upon casual perusal would lead any intelligent mind to pause in uncertainty as to whether the drastic provisions of this section were meant to apply to every mercantile partnership in the broadest sense of the term or to every mercantile partnership embraced within the scope of the act. If the legislature had contemplated the regulation of all partnerships of every kind, it seems reasonable to suppose it would have carried out its purpose by a separate statute framed with that end in view, and would not have attempted to deal with the larger subject by the insertion of a single section in a statute relating in its title and all other sections to a minor branch of the same subject. The possibility of disaster and ruin resulting to innocent persons from considering the provision applicable to limited partnerships alone would hardly have been absent from the legislative mind. The analysis of the act seems to strengthen the view that the twenty-fourth section, like all the others, relates to limited partnerships only. The first section provides: "Limited partnerships, for the transaction of any mercantile, mechanical or manufacturing business, or for the transportation of passengers, products of the soil, or merchandise, within this State, may be formed by two or more persons, upon the terms, with the rights and powers, and subject to the conditions and liabilities, herein pre-

scribed; but these provisions shall not be construed to authorize any such partnership for the purpose of banking or making insurance." The twenty-fourth section, providing for the penalty here sued for, is limited in its operation to mercantile partnerships as distinguished from those formed for the transaction of "manufacturing business. or for the transportation of passengers, etc."

The plaintiff, however, contends that though the act relates in its title and scope to limited partnerships, yet from the context we are forced to the conclusion that the words in the twenty-fourth section, "every mercantile partnership in this State," includes all partnerships except limited partnerships. The argument is, there is every provision in the preceding sections for notice sufficient to protect the public as to the names of the partners, general and limited, and their respective liability, by recording and newspaper publication, and for that reason the further requirements of posting the names of the partners does not apply to limited partnerships but only to general partnerships. The unsoundness of this argument seems to be apparent from its statement. The first section of the act provides for the formation of limited partnerships "upon the terms, with the rights and powers, and subject to the conditions and liabilities, herein prescribed." One of the liabilities "herein prescribed" is the liability to the penalty mentioned in the twenty-fourth section. It seems manifest that the Court could not in the face of this express provision exempt special partnerships from this liability, by holding it inapplicable to them. We venture to think the more natural and reasonable view leads to the inference that the legislature intended the requirement as to posting the partnership names to apply particularly to a special partnership. Preceding sections of the act had required not only recording of the certificate but publication of the terms of partnership. The publication could be required for only a limited time, and it seems not unreasonable to provide after such publication had ceased, perhaps for years, the public should be kept on notice of those whose liability was not unlimited, without re-

course to the records, which might not be thought of in that connection. The proviso at the end of section 24, "that nothing in this section contained shall apply to the special partners of a limited partnership," necessarily implies it was meant to apply to the general partners of a limited partnership. Again, it is important to observe the section under consideration makes the individuals composing the firm, not the partnership itself, liable for the penalty. If it was meant to apply to a general partnership, it is difficult to assign any reason for visiting the penalty on the individuals rather than the partnership itself. On the other hand, considering the section as intended to apply to limited partnerships only, there was manifest justice and propriety in not allowing the penalty to be exacted of the firm and paid from the firm assets, for this would be requiring the special partner to contribute to the penalty incurred in the management of the business, when the law expressly excluded him from any share in the management.

The plaintiff insists the following sentence, found at the end of section 1326 of General Statutes of 1882, section 1432 of Revised Statutes of 1893, shows conclusively the section was not intended to be restricted in its application to limited partnerships: "Every person conductiing any business as agent shall post up and keep posted up in like manner the name of his or her principal, under the like penalty." But this sentence is not in the statute as originally passed in 1837, nor is it in the Revised Statutes of 1873. It appears as a part of the statute law for the first time in the General Statutes of 1882, having been placed there, it seems, by the codifiers, and adopted by the General Assembly without any separate enactment authorizing the amendment. This being so, the argument that this indicates the scope and purpose of the original statute is without force. The plaintiff argues further that the provision of this section, which places a partnership "under pain in case of default of being sued and proceeded against at law or in equity without naming the individual members of the firm," would be more

naturally applicable to general than limited partnerships, inasmuch as the names of the partners of a limited partnership might be ascertained by those wishing to sue, by reference to the official records. It cannot be denied this is a strong argument in favor of applying this section to general partnerships, but it is not sufficient to overcome the evidence afforded by other provisions of this section and the general scope and terms of the statute, to which we have referred, that all of its provisions were intended to apply to limited partnerships only.

With this statement of the scope of the statute, it remains to consider the legal principles which should control in its interpretation. As has been often remarked, the spirit and meaning of a statute is to be gathered from its letter, and it is not to be bent and twisted into meaning what the Court thinks the law ought to be. Courts have nothing to do with the hardship that might result, if the statute is clear. The meaning of words and expressions, both oral and written, is derived from the connection in which they stand and the circumstances in which they are used. The words we are now considering are used in a connection and under circumstances, in a highly penal statute, which do not allow the impartial mind to rest upon the conviction that they were intended to mean every mercantile partnership that could possibly be formed. To do this would require absolute literalness in the interpretation of the words without having any regard to their setting. Endlich on Interpretation of Statutes, section 86. In the case of *Ham* v. *McClaws,* 1 Bay, 93, the Court said: "In the present instance, we have an act before us, which, were the strict letter of it applied to the case of the present claimants, would be *evidently* against *common reason.* * * * We are, therefore, bound to give such construction to this enacting clause of the act of 1788, as will be consistent with justice and the dictates of natural reason, though contrary to the strict letter of the law." An act of 1712 provided a statute of limitation of five years, "excepting any person or persons beyond the seas, or out of

the limits of this province, *femes covert* or imprisoned, who shall be allowed the space of seven years, to prosecute their right, etc." In 1824, it was enacted that the limitation of five years should be changed to ten years. The Court held that although nothing was said of the seven years' limitation, having in view the whole scope of the law and the purpose it was intended to accomplish, the limitation of seven years must also be held extended to ten years. *Blake* v. *Heyward*, Bail. Eq., 211.

Where the language of the statute, taking it altogether, is of doubtful import, the Court may consider the purpose of the act as well as the title. *Denn* v. *Reid*, 10 Peters, 526. In *State* v. *Stephenson*, 2 Bail., 336, the Court says: "In fine, whatever may give certainty to a doubtful construction, may be resorted to, no matter from what source it is derived, whether from comparison of the various parts of the same act, or of different acts on the same subject, the opinions of learned men, or contemporary history." See, also, *State* v. *Fields*, 2 Bail., 554. In *Bank* v. *Evans*, 28 S. C., 521, 6 S. E., 321, in the opinion of the Court, delivered by Chief Justice McIver, it is said: "Now, while it is quite true that where the language of a statute is plain and admits of but one construction, the courts have no power to supply any real or supposed defects in such statute in order to avoid inconvenience or injustice, inasmuch as that is exclusively within the domain of the legislative department; yet where the terms of the statute are not plain, but admit of more than one construction, one of which leads to great inconvenience and injustice, and possibly to the defeat or obstruction of the legislative intent, then the Court may, with a view to avoid such results, adopt some other construction more in accordance with the legislative intent."

The Code of New York enacted that "A person who either—1. With intent to commit a crime therein, breaks and enters a building, or a room, or any part of a building; or 2. Being in any building, commits a crime therein and breaks out of the same—is guilty of burglary in the third degree."

In construing this statute, the Court says, in *People* v. *Richards* (N. Y.), 2 Am. St Rep., 377: "Leaving section 504 for a moment out of view, the crime of burglary is defined as a breaking into a building with intent, etc., and the question arises as to the meaning of the word 'building.' Finding it used in a statute defining burglary, two courses suggest themselves: 1. To regard the term as limited to those structures which the common law, as amended and enlarged by our statute relative to the crime, made capable of being broken and entered burglariously; or 2. To take the widest signification which has ever been given to the term 'building,' and hold that every structure within such meaning is within the statute, provided it could be physically broken and entered. We are persuaded that the first course is the true one. We are unable to believe that the legislature meant to accomplish so radical a change in the nature of this crime by the use of language, which, by its context, is capable of a much more restricted meaning, and one which is fully in accord with the nature of the crime as known to the common law and to our statutes down to the adoption of the penal code. * * *

"It is plain that some limitation must be made to the meaning of those words other than their possible capacity when standing alone. Now, there are certain rules and canons of construction in such cases as this, which seem to us to serve as a perfect guide to the meaning of the language used in this statute. The rule which usually obtains in cases of this kind is, that where general words follow specific words designating certain special things, the general words are to be limited to cases of the same general nature as those which are specified."

In the same case the Court quotes with approval the following language of Halsbury, Chancellor, in *Thames etc. Ins. Co.* v. *Hamilton*, L. R. App. C., 484: "If understood in their widest sense, the words are wide enough to include it (the injury); but two rules of construction, now fairly established as a part of our law, may be considered as limit-

ing these words.  One is, that words, however general, may be limited with respect to the subject-matter in relation to which they are used.  The other is, that general words may be restricted to the same *genus* as the specific words that precede them."

Notwithstanding the broad and general terms of the section now under consideration, we think fair investigation of the subject does not produce a clear conviction that the members of a general partnership are liable to the penalties therein mentioned.  It need hardly be said, it is the duty of one who claims the penalty to show clearly that those from whom he would exact it fall within the meaning of the statute.  So far from his having succeeded in doing this, we think the weight of the argument is against his position.  "The rule that penal statutes, as contradistinguished from remedial statutes, must be construed strictly, is but a means of arriving at the intention.  When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and when it is entirely within the discretion of the law-giver, it will not be presumed that he intended it should be extended further than is expressed; and humanity would require that it should be so limited in the construction as to be certain not to exceed the construction" (*State* v. *Stephenson,* 2 Bail., 335).

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.