### 10091

#### PINELAND CLUB *ET AL.* v. BERG, COUNTY TREASURER.
#### OKEETEE CLUB v. SAME.
#### · PRATT v. SAME.

(96 S. E. 915).

1. GAME — LICENSES — PAYMENT— RECOVERY—PLEADING.—Complaint to recover license tax paid under Act February 27, 1917 (30 St. at Large, p. 190), sec. 1, for lands held as game preserve in excess of 5,000 acres, *held* not demurrable.

2. GAME—LICENSES—PRESERVES.—A club owning land used for the sole purpose of permitting its members to hunt thereon is not liable for the tax imposed by Act February 27, 1917 (30 St. at Large, p. 190), sec. 1, upon lands in excess of 5,000 acres held for the purpose of raising and protecting fish or game.

3. STATUTES—LOCAL AND SPECIAL LAWS—VALIDITY.—Act February 27, 1917 (30 St. at Large, p. 190), imposing a license tax upon lands held for the purpose of raising and protecting game or fish, section 6 of which excepts Berkeley county from its operation, is invalid as in violation of Const., art III, sec. 34, prohibiting local or special laws to provide for the protection of game.

Before McIVER, J., Jasper, Spring term, 1918.   Reversed and judgment ordered for plaintiffs.

Three actions by the Pineland Club and others, by the Okeetee Club, and by H. L. Pratt, against J. S. Berg, treasurer of Jasper county.   From an order sustaining demurrer to the complaint, the plaintiffs in each case appeal.

The statute referred to in the opinion, being Act February 27, 1917 (30 St. at Large, p. 190), sec. 1, is as follows:

"*Be it enacted* by the General Assembly of the State of South Carolina, That from and after the passage of this act, all persons, firms, corporations or associations holding or

acquiring lands, either in fee or term of years, more than five thousand acres, shall pay a license fee for all lands in excess of said five thousand acres which are now used or to be hereafter used for the purposes of raising and protecting fish or game or both, in the following sums, that is to say: All lands in excess of five thousand acres which are used and intended to be used for the purposes of raising game or fish, the sum of two cents per acre, up to thirty thousand acres; and all acreage in excess of thirty thousand, the sum of four cents per acre; all lands in excess of fifty-five thousand acres, five cents per acre."

The complaint is as follows:

The plaintiffs, complaining of the defendant, allege:

First. That the plaintiff, Pineland Club, is an unincorporated association consisting of the plaintiffs, E. W. Clark, George C. Clark, Joseph S. Clark, Arthur Lyman, Oliver Ames, Lewis R. Morris, D. Crawford Clark and Horace Stebbins, whose property is held in trust by the plaintiffs, E. W. Clark and Arthur Lyman, by virtue of a deed between E. W. Clark, surviving trustee *et al.,* and E. W. Clark *et al.,* dated the 30th day of October, 1917, and recorded in Jasper county, in Book 2D, p. 262. That the property so held by said trustees is located in Jasper county, State aforesaid, and said trustees are required under said deed to pay such taxes as may be imposed against said club.

Second. That at the time of the payment of the taxes hereinafter mentioned, the plaintiffs held the following property in Jasper county, to wit: 17,582 acres in fee; 5,818.92 acres under leasehold for five years, with the right of the lessor to sell, freed from lease, upon 60 days' notice. Shooting privileges over about 4,000 acres. That before the payment of the taxes, notice to terminate said lease was given, so that the said lease terminated January 1, 1918. That neither the plaintiffs or either of them hold any title over the said 4,000 acres, but have merely the right to shoot over the same.

Third. That more than two-thirds of the said land held in fee, and under said leasehold, are unfit for cultivation, being either low or swamp land, or land located in or along the branches.

Fourth. That the members of the Pineland Club, or many of them, enjoy the privileges of hunting as an incident to their membership in said club, and, therefore, they prohibit all hunting on their holdings except by members; and, in addition, they limit by strict rules the amount of game each member may kill. That in this manner alone does the club raise and protect game. That such hunting, raising, and protection of game is done merely as a recreation, and not as a .business, or for pecuniary profit. That the Pineland Club uses its lands as is customary by landowners throughout the State.

Fifth. That by virtue of an act of the legislature, No. 97, passed February 27, 1917, there has been charged against the Pineland Club on the books of the defendant, the treasurer for Jasper county, the sum of $448, which represents a tax on a total 27,400 acres, to wit, all the holdings of the Pineland Club, including the acreage over which the said club has only shooting privileges. That on the 20th day of December, 1917, the plaintiffs paid the said tax under protest in accordance with Code S. C., vol. I, sec. 461; the following being the protest delivered to the said treasurer upon the payment of the tax:

"State of South Carolina, County of Jasper. To J. S. Berg, Esq., Treasurer Jasper County, Ridgeland, S. C. Payment Under Protest. Dear Sir: The Pineland Club hereby hands you the sum of four hundred and forty-eight ($448) dollars; being the amount charged on the books .of your office against the said club, as a license imposed by reason of the act of the legislature, No. 97, February 27, 1917. This payment is made under protest, in accordance with Code, sec. 461. The grounds of protest are as follows:

"First. That the Pineland Club owns about 17,582 acres in fee; and has possession of about 5,818.92 acres under lease for five years, with the right of lessor to sell, freed from lease upon sixty days' notice; and shooting privileges over about 4,000 acres. The notice to terminate the said lease has been given, and said lease terminates January 1, 1918. That more than two-thirds (2-3) of the said lands held in fee and under said leasehold, are unfit for cultivation, being either low and swamp land, or land located in or along the branches; and that the shooting rights over the 4,000 acres are not included within the terms of the act. The said tax has been imposed upon all the acreage above mentioned.

"Second. That the Pineland Club plants the arable lands under its control, and uses its properties as is usual and customary by landowners in this State. That there is no ground for imposing upon the said club a tax not imposed on other landowners in this State.

"Third. That the only means of raising and protecting game adopted by the Pineland Club is that in common use by landowners throughout the State, to wit, by prohibiting poachers, and further, by limiting the amount of game that each member of the Pineland Club may shoot, and thereby preventing the game from being exterminated. And, therefore, the terms of the statute are not applicable to the Pineland club.

"Fourth. That the said statute, if its terms are held to be applicable to the Pineland Club, is unconstitutional, because it violates the following provisions of the Constitution of the State of South Carolina, to wit:

"Art. I, sec. 5. 'The privileges and immunities of citizens of this State, and of the United States, under this Constitution, shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the laws.'

"Art. I, sec. 6. 'All property subject to taxation shall be taxed in proportion to its value.'

"Art. III, sec. 34. 'The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, * * * to wit: * * * (6) To provide for the protection of game. * * * (9) In all other cases where a general law can be made applicable, no special law shall be enacted.'

"Art. X, sec. 1. 'The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property * * * *And provided, further,* That the General Assembly may provide for a graduated tax on income, and for a graduated license on occupations and business.'

"Art. III, sec. 15. 'Bills for raising revenue shall originate in the House of Representatives.'

"This act having originated in the Senate.

"The Pineland Club avers that this tax is not a tax on an occupation or business, for the reason that the raising and protection of game by the Pineland Club is not for business or profit, but solely for recreation as an incident to the ownership of land.

"Fifth. That the said act of the legislature likewise violates the following clause of the Constitution of the United States, to wit:

"Amendment, art. XIV, sec. 1, to the effect that 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. (Signed) The Pineland Club, by J. C. Richardson, Manager.'"

Sixth. That the plaintiffs and each of them, allege that the said tax is unlawful for the following reasons:

(a) Because it is placed upon land over which the Pineland Club has only shooting privileges.

(b) Because the lands of the Pineland Club are not used or hereafter to be used for the purpose of raising and protecting fish or game, or both, in the sense intended by the said statute; the raising and protecting of said game being only an incident to the ownership of land, and not done as a business or a profit.

(c) That if the terms in language are applicable to the Pineland Club, then the same becomes unconstitutional as violating the following provisions of the Constitution of South Carolina:

Art. I, sec. 5. "The privilege and immunities of citizens of this State and of the United States, under this Constitution shall not be abridged nor shall any person be deprived of life, liberty or property, without due process of law, nor shall any person be denied the equal protection of the laws."

Art. III, sec. 34. "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, * * * to wit: * * * (6) To provide· for the protection of game. * * * (9) In all other cases, where a general law can be made applicable, no special law shall be enacted."

Art. X, sec. 1. "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, * * * *And provided, further,* That the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business."

Art. II, sec. 15. "Bills for raising revenues shall originate in the House of Representatives."

This act having originated in the Senate.

And also the following provisions of the United States Constitution, to wit:

Amendment, art XIV, sec. 1, to the effect that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

And for reasons set forth in said protest.

Wherefore, plaintiffs pray that the amount of said tax, to wit. $448, be returned to them.

The exceptions were as follows:

‘ The appellants except to the judgment sustaining the demurrers, on the following grounds:

First. Because his Honor erred in holding that the allegations of the complaint showed that the appellants were included within the terms of the act entitled, "An act requiring all persons, firms, corporations or associations holding or acquiring more than five thousand acres of land at any one time for the purposes of raising fish or game to pay into the treasuries of the respective counties of South Carolina certain license," approved February 27, 1917, and were properly taxed in accordance with said statute; and in not holding that, if the allegations of the complaint are true, the appellants were not included within the terms of the said statute, and should not have been taxed, and the demurrer should have been overruled.

Second. Because his Honor erred in holding that the said statute authorized a license to be levied against the appellant, the Pineland Club, on account of land over which the said club held only shooting privileges; and in not holding that the said satute did not authorize a tax based on such tenure.

Third. Because his Honor erred in holding that the said statute, being applicable to the appellants, was not in violation of the Constitution of the State of South Carolina, and

in not holding that the said statute is contrary to the said Constitution, and, therefore, void, for the following reasons, to wit, because it violates:

(a) Art. I, sec. 5, of the Constitution of the State of South Carolina, providing: "The privileges and immunities of citizens of this State and of the United States under this Constitution, shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the laws." In that, the said act purports to deprive owners of land of a rightful use of their property.

(b) Art. I, sec. 6, of the Constitution of the State of South Carolina, providing: "All property subject to taxation shall be taxed in proportion to its value." In that, the property of the appellants is not taxed in proportion to its value.

(c) Art. III, sec. 34, of the Constitution of the State of South Carolina, providing: "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects, * * * to wit: * * * (6) To provide for the protection of game. * * * (9) In all other cases where a general law can be made applicable, no special laws shall be enacted." In that, the said act involves a subject where a general law is required or could be made applicable, and the said act is a special law as it excepts Berkeley county from its operation.

(d) Art. X, sec. 1, of the Constitution of the State of South Carolina, providing: "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure just valuation for taxation of all property * * * *And provided, further,* That the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business." In that, the tax provided for by the said act can be justified only as a graduated license on occupation and business, and the complaint shows that such rais-

ing and protection of game as is done by the appellants is for solely pleasure, and not as an occupation or business.

Fourth. Because his Honor erred in holding that the said statute, being applicable to the appellants, was not in violation of the Constitution of the United States, and in not holding that the said statute is contrary to the Constitution, and consequently void, for the following reasons, to wit, because it violates the United States Constitution: Amendment, art. XIV, sec. 1. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." In that, the statute purports to deprive the plaintiffs of their property without due process of law, and denies to appellants the equal protection of the laws of the State of South Carolina.

*Messrs. Frank R. Frost* and *John P. Wise,* for appellants, Okeetee Club and H. L. Pratt, submit: *The act is unconstitutional:* Constitution of 1895, article I, section 6; article X, sec. 1; 6 S. C., p. 6. *Appellants not engaged in occupation or business:* Cyc. 25, p. 614, and notes; 46 Ala. 307; 31 Tex. 277; 5 N. C. 291; 35 Am. Dec. 72; 52 L. R. A. (N. S.) 953; 49 L. R. A. (N. S.) 411; 62 Ga. 645; 25 Cyc. 609, and notes. *Persons not liable:* 110 Ga. 198; 35 S. E. 365; 67 L. R. A. 799; 52 L. R. A. (N. S.) 954; Cooley on Taxation, p. 394; 37 Cyc. 754. *Taking away property without due process of law:* 12 Cyc. 1215, and cases cited in notes. *Denial of equal protection of laws:* 60 S. C. 46; 59 S. C. 417. *It is special legislation:* Constitution of 1895, art. I, sec. 34; 99 S. C. 381-382; 51 S. C. 51; 59 S. C. 110; 60 S. C. 501; 62 S. C. 249; 66 S. C. 219; 73 S. C. 194; 99 S. C. 379; 85 S. C. 186. *The statute violates amendment, article XIV, sec. 1, U. S. Constitution, prohibiting a State from enforcing any law, which deprives any persons of property*

33—110.

*without due process of law, or which denies persons the equal protection of the law.*

Messrs. *Frank R. Frost* and *Joseph S. Clark,* for Pineland Club, appellant, submit: *The evident purpose of the act is to raise money, and not to protect game—there are abundant game laws:* Acts of 1911, No. 62; Acts of 1912, No. 340; Acts of 1915, Nos. 141 and 151; Acts of 1917, No. 31. *This license fee violates the following constitutional provisions:* (a) article I, section 5; (b) article I, sec. 6; (c) article I, sec. 34; (d) article X, sec. 1; (e) Constitution of the United States, Amendment XIV, sec. 1; sec. 42 S. C. 300; 31 S. E. 252. *As to cases bearing on article III, sec. 34:* 51 S. C. 51; 28 S. E. 15; 56 S. C. 516; 35 S. E. 215 and 218; 66 S. C. 37; 44 S. E. 377; 165 U. S. 150; 17 Sup. Ct. 225; 41 L. Ed. 666; 66 S. C. 219; 44 S. E. 797; 59 S. C. 114; 37 S. E. 226; 165 U. S. 150; 41 L. Ed. 666, and cases therein cited. *There is no force in the suggestion that this License Fee Act can be sustained on the ground that it was enacted in pursuance of the police power:* 53 S. C. 250; 31 S. E. 322; 21 S. C. 295; 238 U. S. 56; 59 L. Ed. 1199; 165 U. S. 150; 4 S. C. 376; 6 S. C. 1; 59 S. C. 110; 37 S. E 226; 59 S. C. 396; 38 S. E. 11; 60 S. C. 501; 39 S. E. 5; 61 S. C. 205; 39 S. E. 381; 62 S. C. 247; 40 S. E. 553; 66 S. C. 229; 44 S. E. 790; 73 S. C. 194; 52 S. E. 960; 85 S. C. 186; 67 S. E. 158; 85 S. C. 517; 67 S. E. 781; 99 S. C. 381; 83 S. E. 594; 173 U. S. 509; 43 L. Ed. 786; 174 U. S. 99; 43 L. Ed. 909; 177 U. S. 584; 44 L. Ed. 897; 184 U. S. 539; 46 L. Ed. 670.

*Thomas H. Peeples, Attorney General; C. H. Sapp, Asst. Attorney General,* and *Mr. H. Klugh Purdy,* for respondent, submit: *A demurrer admits facts but not construction of statutes or conclusions of law or fact:* 104 S. C. 268. *The act in question is an exercise of the police power:* 21 U. S. L. Ed. 161; U. S. 646; 222 U. S. 225; 6 S. C. 6; 143 U. S. 517; 136 Mass. 239; 53 L. Ed. 319; 31 L. Ed. 205; 34

L. Ed. 455; 61 L. Ed. 1336; 56 L. Ed. 1230; 17 L. R. A. 388; 58 L. Ed. 387; 200 U. S. 592; 148 Fed. 523; 177 U. S. 595; 163 U. S. 299; 245 U. S. 60; 53 S. C. 259; 2 Speer 761. *The presumption in favor of the constitutionality of legislative enactments exists until the constitutional inhibition is clearly shown:* 101 S. C. 312; 89 S. C. 128. *The title to all wild birds is in the State, and it follows that the legislature has the right to place a license tax upon landowners in this State for the use of their property as game preserves for raising and protecting game:* Vol. XI of the Code of Laws of 1912 (Crim. Code), sec. 715. *As to the charge that the act under attack is special legislation in violation of article I, sec. 34, subdivisions 6 and 9 of the Constitution of 1895:* 58 S. C. 110; 60 S. C. 504; 66 S. C. 221; 64 S. C. 194; 17 L. R. A. 385; 109 S. C. 1; 95 S. E. 121; 85 S. C. 186; 99 S. C. 379.

September 20, 1918.                              .

The opinion of the Court was delivered by MR. JUSTICE GAGE.                                             ·

Three actions at law, and in form to recover back certain license tax money exacted of the payers by Jasper county under a statute of the State enacted in 1917 (30 Stats. 190). Demurrer was made to the complaint upon the ground it did not state facts sufficient to constitute a cause of action; the demurrer was sustained by the Court in a *pro forma* order; and the appeal is from that order.

The defendant might well have abided a trial, and have made then a fuller issue than has been raised by demurrer. Let the complaint in one of the cases, and the first section of the statute, and the exceptions, be reported.

1    We are of the opinion that the demurrer ought to have been overruled.

There are four exceptions, and they are all relevant to the three plaintiffs save the second exception, and that is made only by the Pineland Club.

The case must go against the county on the first exception, because the allegations of the complaint, for the present admitted to be true, do not bring the transaction which is pleaded within the plain words of the statute.

The fourth paragraph of the complaint states the purposes for which the land is held and which is sought to be subjected to a license tax, to wit, for the members of the club to hunt upon for recreation, and subject to the rules of the club which limit the game to be taken. The statute levies a license tax on associations, etc., which hold lands for purposes of raising and protecting fish or game. The plaintiffs construe the statute to be one to raise revenue, and as such they say it is in violation of the tax provisions of the State Constitution. The county of Jasper, on the other hand, construes the statute as "an exercise of the police power of the legislature, and that its primary purpose is, not the raising of revenue, but the regulation of a condition existing in the State by way of restraining the rights of the individual for the common good of the State and the welfare of her citizens generally." And further: "To our mind it appears so plain as that those who run may read that the legislature, taking cognizance of the harmful results incident to the withdrawal of large areas of land for game preserves, has, by this legislation, attempted to regulate and discourage the practice."

And the Attorney General has defended the statute upon the ground that it is a limitation of the quantity of land in a given community which may be withdrawn from husbandry or other useful interests, and dedicated to the chase.

We make no doubt but that the suggestion of the Attorney General about what was the real intent of the legislature is correct. The license tax was imposed, not primarily to raise revenue, but as an instrumentality to compass the main purpose of the statute. But the purpose for which a statute is enacted may be only known, as a rule, by the words which

have been used in the statute. *Kaufman v. Carter,* 67 S. C. 317, 45 S. E. 211. In the instant case, the plaintiffs were not using the land for the purpose of raising and protecting fish or game, or both. Had they been so engaged, it might be questionable as a matter of public policy whether such a statute would have been directed towards them; or, if so directed, it might be questionable whether it would have been a lawful exercise of the police power.

The Attorney General admits in his brief that the act does not include planters of the State, and that because planters would not "protect and raise game in the manner admitted by the appellants." But planters, like other people, must be governed by the words of the statute. We take notice of the character of the terrain in Jasper; and, should any class of citizen dedicate 10,000 acres of it to raising of game and fish for the useful purposes of commerce, then by the words of the statute 5,000 acres of the tract of land would be subject to the license tax prescribed by the statute. The instant statute has, however, by the words of it, no reasonable application to those persons who are doing what the complaint declares the plaintiffs are doing. The statute and the pleadings do not raise the very interesting question argued by the Attorney General, which is the right of the State in the exercise of the police power to declare how much of the land in the State may be, without some added burden like a license tax, or at all, withdrawn from agriculture or from other useful interests, and dedicated to the purposes of the chase.

The conclusion renders irrelevant the other exceptions, save subdivision (c) of the third exception. The Attorney General did not seriously contest that exception. It is manifestly well taken and must be sustained. *Dean v. Spartanburg,* 59 S. C. 110, 37 S. E. 226; *Carroll v. York,* 95 S. E. 121.

The 6th section of the statute renders the whole of it a nullity.

Our judgment is that the order below be reversed, and that the plaintiffs are entitled to have judgment for the tax money paid by them under the alleged statute.