KITCHEN v. SOUTHERN RY.

1. Words and Phrases.—"Heir" and "Distributee" mean the same thing, unless there is something to change the ordinary meaning of the word "heir."
2. Lord Campbell's Act—Construction of Statutes—22 Stat., 788.— The word "of," in act of 1898, as to action for wrongful death, construed to mean "or," so that the act shall read, "and if there be none of such, then for the benefit of the heirs at law *or* (of) the distributees of the person, &c."
3. Pleadings—Amendment—Complaint.—Under sec. 194 of Code of Proc., a complaint stating a cause of action may be amended before or after judgment.

Before Aldrich, J., Union, January term, 1903. Affirmed.

Action by R. A. Kitchen, administrator of Hannah J. Owens, against Southern Ry. From Circuit order, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *As to construction of statute:* Suth. on Stat. Con., sec. 371; 30 N. J., 188, 209; 4 Hern., 733; 51 Tex., 189; 103 Ind., 44; 26 Ill., 400; 28 Minn., 237; 17 Neb., 750; 21 Barb., 245; 23 Ind., 133; 3 W. Va., 376; 3 Ell. on R. R., sec. 1359; 70 Am. St. R., 675; 45 S. C., 344; 29 S. C., 161. *History and construction of statute in question:* 12 Stat., 706; 54 S. C., 492; Gen. Stat., 2184; 21 Stat., 523; Rev. Stat., 2316; 22 Stat., 788; 15 Rich., 208; 32 S. C., 144; 60 S. C., 415. *As to construction of word "heir:"* 40 L. R. A., 133; 71 Minn., 516; 57 Fed. R., 699; 23 N. Y., 158; 52 N. Y., 389; 133 Mass., 430.

*Messrs. V. E. DePass, C. P. Sims* and *Stanyarne Wilson,* contra, cite: *Cause of action being stated, complaint may be amended:* Code of Proc., 194; 58 S. C., 468. *Does complaint state that action is brought for benefit of any one of classes named in statute?* Rev. Stat., 1893, 2316; 22 Stat., 788; 37 S. C., 55; 54 S. C., 495; 23 Ency., 297, 412, 417, 418, 306, 307, 308, 309, 357, 372, 364, 362, 420, 421, 422; 16 S. C., 425; 28 S. C., 238.

April 21, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. Mrs. Hannah J. Owens, wife of D. W. Owens, was killed while attempting to cross the track of the defendant on the public highway, near the town of Santuc, in the county of Union, in the State aforesaid, by a train operated by the defendant railway company, on the day of March, 1899. On the 9th day of December, 1902, an action was commenced by the plaintiff, as the administrator of the estate of the said Hannah J. Owens, deceased, against the defendant railway company to recover the sum of $10,000. The complaint was as follows:

"'The plaintiff above named, complaining of the defendant, respectfully shows unto the Court:

"1. That defendant is a corporation duly created by and existing under the laws of the State of South Carolina,

owning and operating a railroad running from the city of Spartanburg to the city of Columbia, under the corporate name of the Southern Railway Company.

"2. That on the        day of March, A. D. 1899, Hannah J. Owens, a citizen of said county, while going to her home, traveling upon the public highway, attempted to cross the tracks of defendant railway where the same intersects the public highway at grade, in said county and State, near the town of Santuc; that while said Hannah J. Owens was crossing said track and upon the public highway, where she had a right to be, defendant caused its locomotive, drawing its passenger cars, to approach said grade crossing at a terrific rate of speed, and without notice to said Hannah J. Owens, and without ringing the bell or blowing the whistle of said engine, as required by law, and in a negligent and wanton and reckless manner, and in violation of the rights of said Hannah J. Owens, struck her with its engine and ran over her body, mutilating the same in a horrible manner, thereby unlawfully causing the death of said Hannah J. Owens, to the great damage of plaintiff and those for whom he sues, $10,000.

"3. That plaintiff is the duly appointed administrator of the estate of Hannah J. Owens, deceased, in said county and State.

"4. That plaintiff sues for the benefit of D. W. Owens, the sole heir of Hannah J. Owens.

"Wherefore, plaintiff demands judgment against defendant for the sum of $10,000, his reasonable damage, and for costs of this action."

When the cause was called for trial before his Honor, Judge Aldrich, at the January, 1903, term of the Court of Common Pleas for Union County, the plaintiff moved to amend his complaint by adding a paragraph thereto, to be known as paragraph five, and to read as follows: "That Hannah J. Owens died intestate, leaving no father, mother, brother or other persons or heirs dependent upon her save

her husband, D. W. Owens, for .whose benefit this action is brought."

The defendant objected to this motion upon two grounds: (1) That no notice of the motion had been served upon it; and (2) That as the complaint had failed to state facts sufficient to constitute a cause of action, there is nothing in the complaint to amend.

The defendant also demurs to the complaint in writing, that the complaint failed to state facts sufficient to constitute a cause of action. The Circuit Judge granted the motion to . amend the complaint as prayed for, because the complaint as originally served, stated a cause of action and dismissed the demurrer. The Circuit Judge held that paragraph four of the complaint, although crude in form, stated a cause of action. Plaintiff might have been compelled on motion to make his complaint more definite and certain, still it states a cause of action. Thereupon the defendant appealed on the following grounds:

"1. Because his Honor erred in granting the motion to amend the complaint and in holding that the complaint stated facts sufficient to constitute a cause of action against the defendant; whereas, his Honor should have held that there was no allegation in the complaint alleging that the action was brought for the benefit of any one in any of the classes named in the act which was of force at the time of the alleged accident.

"2. Because his Honor should have refused the motion to amend, and should have held that the facts stated in the complaint were not sufficient to constitute a cause of action in favor of plaintiff against the defendant, in that it appeared upon the face of the complaint that the person for whose alleged benefit the action was brought, was not one of those for whose benefit, under the act, such an action could have been brought.

"3. Because his Honor should have held that the complaint did not allege that the person for whose benefit this action was brought came within any of the classes mentioned

in the act, but, on the contrary, that the allegations of the complaint showed that it was brought for the benefit of one of a class not named in the act, and that there was a total failure to allege facts sufficient to constitute a cause of action against the defendant.

"4. Because his Honor erred in overruling the demurrer interposed by the defendant, and in not ruling and holding that it appeared upon the face of the complaint that the facts stated were not sufficient to constitute a cause of action against the defendant, in that it appeared upon the face of the complaint that the person named in the complaint for whose alleged benefit the action was brought, did not come within any one of the classes named in the act, for whose benefit an action of this kind could be brought. ·

"5. Because his Honor erred in not sustaining the demurrer and dismissing the complaint on the ground that the facts stated in the complaint were not sufficient to constitute a cause of action against the defendant, but, on the contrary, showed that the action was brought for the benefit of one of a class not named in the act which was of force at the time the accident occurred, and at the time the action was commenced."

We will now consider this appeal. As long as *Lilly* v. *R. R.*, 32 S. C., 142, 10 S. E., 932; *Nohrden* v. *R. R. Co.*, 54 S. C., 492, 32 S. E., 524; *In re estate of Mayo*, 60 S. C., 401, 38 S. E., 634, stand, it is settled law in this State that in actions under Lord Campbell's Act, where the complaint fails to state a cause of action, it is not amendable so as to state a cause of action. In the first case cited, *Lilly* v. *R. R. Co., supra*, Chief Justice Simpson, as the organ of this Court, said: "A good rule by which to test the sufficiency of a complaint when assailed by a demurrer like that interposed here, is to inquire what facts are necessary to constitute a cause of action, and then to examine whether such facts are alleged, the plaintiff in his evidence being confined to such alleged facts. The action below was brought under sections 2183 and 2184, General Statutes, which, contrary to the

common law, allows actions in certain cases to be brought for injuries done to persons even after the death of such person. Section 2184, however, distinctly specifies the parties for whose benefit such actions are allowed, to wit: for the wife, the husband, parent and children of the deceased. In order, then, for the administrator of such deceased to have a cause of action, there must be left one or more parties bearing the relation above to said deceased; otherwise the common law principle governs. And in order to allow plaintiffs to prove that such relations were left, there should be an allegation in the complaint to that effect, or the defendant might be taken entirely by surprise * * * In the complaint herein, there was no such allegation. True, it is alleged that the plaintiff and children were dependent upon the deceased, but it does not follow that they were dependent, because of the fact that they were his wife and children. They might have been dependent, and still not his wife and children. It does not appear from the complaint that there were any parties either directly or indirectly or by representation interested in this action before the Court. We think, therefore, that the demurrer was properly sustained."

So, therefore, if the allegations of paragraph 4 of the complaint fails to show, however crudely stated, that a party is named therein as a beneficiary, "as sole heir of Hannah J. Owens," then the complaint has not stated a cause of action. But it is contended that while section 2316 of the Revised Statutes of 1893 did provide, "Every such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so caused; and if there be none such, then for the benefit of the heirs at law or distributees of the person whose death shall have been so caused, as may be dependent on him for a support, and shall be brought by or in the name of the executor or administrator of such person; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be

brought, and the amounts so received shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate;" yet that the act of the General Assembly of this State, passed in 1898, which act of 1898 was in full force when this tragedy occurred, ousted, so to speak, D. J. Owens from any right even to be considered an heir of his deceased wife. The language of this statute of 1898, 22 Stat., 788, was as follows:

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, That section 2316 of the Revised Statutes of South Carolina of 1893 be so amended as to read as follows:

"Section 2316. Every such action shall be for the benefit of the wife or husband and child or children of the person whose death shall have been so caused; and if there be no such wife or husband or child or children, then for the benefit of the parent or parents; and if there be none such, then for the benefit of the heirs at law of the distributees of the person whose death shall have been caused as may be dependent on him for support, and shall be brought by or in the name of the executor or administrator of such person; and in every such action the jury may give such damages as they may think proportionate to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought. And the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate."

It must be remembered that in applying the principles of law involved by a demurrer to the complaint, the latter must be taken as it stands. Thus, in the complaint it is not stated that D. J. Owens, named in the 4th paragraph as sole heir of the deceased, was her husband. Therefore, we are bound to look upon him as sole heir of the

deceased, and not think of him as her husband. Now what does the word "heir" mean? In *Dukes* v. *Faulk,* 37 S. C., at page 264, 16 S. E., 122, this Court said: "In order to understand who is the 'heir,' it is necessary only to inquire to whom by the law of the land would the estate pass in case of intestacy?" Quoting from *Seabrook* v. *Seabrook,* Mc-Mull Eq., 206 and 207.

In *Templeton* v. *Walker,* 3 Rich. Eq., 550, it is said: "The term 'heirs' is inapplicable to the succession to personal estate, and even as to real estate, we have no other heirs except the *hæredes facti* of our statute of distributions. So that ordinarily we must look to the statute of distributions to ascertain the persons who are entitled to the character of heirs, as well as the shares to be enjoyed by them."

Both the provisions of the Revised Statutes of 1893, as well as those in the act of 1898, require certain divisions to be made under our statutes for the distribution of intestate's estates. Thus, therefore, the word "heir" and the word "distributee" mean the same thing, unless there is something to change the ordinary meaning of "heir." Here there is nothing. So that in framing this complaint the word "heir" was used instead of the word "distributee."

Again, the appellant insists that the words "heir at law" "*of* distributees, &c.," must be taken, and that we must not strike out the word "of" and insert the word "or" between "heirs at law" and "distributees." A careful study of the text of this legislation convinces us that it is necessary to strike out the word "of" and insert the word "or." The argument of respondent is so appropriate that we insert a part of it just here:

"Appellant contends—and it is really his sole contention—that the act of 1898 made another very great and important change, to wit: As above quoted, the language of the act is, 'and if there be none such (*i. e.,* wife, husband, child or parent), then for the benefit of the heirs at law *of the* distributees of the person, etc.,' in place of 'for the benefit of the heirs at law or distributees of the person, etc.' It

36—68

is the substitute of the words 'of the' for the word 'or.' The change in the act which would be wrought by such substitution would be: In the event that there should be no husband, wife, child or parent of the deceased, then no one can recover, unless he occupy the position of 'heir of the distributees of the deceased.' A brother (whom we will designate C.) could not be the beneficiary, because he would be a distributee himself, not an heir of a distributee; unless there should have been some other person than deceased (whom we will designate B.), of whom he might be an heir, who would have been a distributee of the person killed (whom we will designate A.), if such person, B., survived him, A. But then if such person, B., had not survived A., neither could he be a distributee of A. Whereas, if he, B., did survive A., then C., the living brother, could not be a beneficiary under the act; for he, C., could not then be an heir of B., who was as much alive as he, C., was. At the time of the death of A., none of the relatives could at once be a distributee of A., and himself have heirs, he could not be both alive as distributee and dead as ancestor. And yet, there must needs be some such impossible distributee before there could be persons filling the description of his heirs. Moreover, it is only such impossible heirs who would be beneficiaries under the act of 1898. in the absence of husband, wife, child or parent of the deceased. The legislature cannot be presumed to have contemplated or intended such stultifying language. If it had purposed to limit the right of action in beneficiaries to husband, wife, child and parent, it would have so declared in direct and open terms. The heirs of the distributees of A. could not all be existing, and, therefore, beneficiaries until the death of all the distributees. If any of the distributees should survive A. longer than two years, then the right of action would be defeated, because action under the statute must be commenced within two years after the death of A. The concluding clause of the act is as follows: 'And the amount so recovered shall be divided among the before-mentioned parties in such shares as they would

have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate.' This portion of the act would be wholly inoperative, because if the deceased had died intestate, none of his personal assets would have gone to the heirs at law *of* his distributees, but to his own heirs at law *or* distributees. This shows conclusively that the word 'of' was intended by the legislature to be 'or,' just as it had been for forty years in this State. It is so evident that the error occurred in the drafting of the bill or in the course of its passage by the accidental or careless substitution of the letter 'f' for 'r,' that the Court will not, in the light of such manifest error, so construe that change in the act as to give it a meaning resulting in the practical annihilation of that important portion of it; radically changing it from its clear and established meaning and condition. The Court will not adopt a construction which will reduce an act to an absurdity, when the language can be so easily accounted for and explained as a mere clerical error.

"We think it sufficient to quote the following canons of interpretation and construction supported by authorities collected in 23 Encyclopedia (1st edition), in what appears to be an excellent discussion of the subject of statutes.

" 'Statute law is the will of the legislature, and the object of all judicial interpretation of statutes is to determine what intention is conveyed, whether expressly or by implication.' 23 Ency., 297.

" 'The American rule is in substantial accord with the modern English rule. It is laid down as a fundamental principle of construction that effect must be given to the intent of the legislature, and where that intent is plainly expressed, the language must be taken in its plain and ordinary signification. But when the Court is confronted with an ambiguity, or an absurdity would arise from giving the language its ordinary meaning, the rules of construction are invoked to ascertain the true legislative intent, and the letter

of an act may be sacrificed only so far as is necessary to give effect to such intent.' *Idem.*, 412.

" 'When to give words of a statute their ordinary meaning, or to adhere strictly to the arrangement of words or phrases of sentences, would result in manifest contradiction of, or inconsistency with, the plain purposes of the law, evident mistakes, accidental omissions, and the improper use of words, may be remedied, the ordinary meaning may be modified, and even the structure of sentences may be altered to prevent such a result.' 417.

" 'Courts cannot add or take from the words of a statute to give effect to any supposed intention of the legislature; but when the intention can be ascertained with reasonable certainty, words may be altered or supplied in the statute, so as to give it effect and avoid any repugnancy to, or inconsistency with, such intention.' 418.

" 'All parts of the same statute must be taken together. If one part, standing by itself is obscure, it may be aided by another.' 306.

" 'The true rule for the construction of statutes is to look to the whole and every part of the statute, and to the apparent intention derived from the whole, to the subject matter, to the effect and the consequences, and to the reason and spirit of the law, and thus to ascertain the true meaning of the legislature, though the meaning so ascertained conflicts with the legal sense of the words. Aldis, J., in *Ryegate* v. *Wardsboro*, 30 Vt.' 23 Ency., 307.

" 'It is a rule, in construing statutes, that the original act and the amendment are to be viewed as one act, and that no portion of either is to be declared inoperative, if they can be made to stand together without wresting the words from their appropriate meaning. *Harrell* v. *Harrell*, 8 Fla., 46; *U. S.* v. *Cent. Pa. R. Co.*, 118 U. S., 235.' *Idem.*, 308.

" 'In *Blanchard* v. *Sprague*, 3 Sumn. (U. S.), 282, Story, J., said: "I agree that in construing an act of Congress, if there be a plain mistake apparent upon the face of the act

which may be corrected by other language in the act itself, the mistake is not fatal.' " *Idem.*

" 'That construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected, if an interpretation can be found which will give it effect.' *Idem.*, 309.

" 'The presumption is that the legislature does not intend to change or modify the law beyond what it explicitly declares, either in express terms or by unmistakable implication; for it is not to be supposed that the legislature will overturn an established principle of law without expressing such intention with irresistible clearness.' *Idem.*, 357.

" 'In the amendment, re-enactment or revision of a statute, a mere change of phraseology works no change in the established interpretation thereof, unless it clearly appears that such was the intention of the legislature. Nor will the omission of a material word in the amending, re-enactment or revision of a statute change the law, unless such be the evident intent of the legislature.' *Idem.*, 372.

" 'There is a presumption that the legislature intended that every word and clause in a statute should be of some force and effect; accordingly, courts will, if the language will reasonably permit, so construe a statute that the whole may stand and be effective. To this end, words have been supplied and rejected, their collocation altered, and wrong dates and figures corrected. But if the language is precise and unambiguous, a construction not supported by it will not be adopted, although the consequences will be to defeat partially or wholly the purposes of the act.' *Idem.*, 364.

" 'There is a strong presumption against absurdity in a statutory provision; it being unreasonable to suppose that the legislature intended their own stultification. So, when the language of an act is susceptible of two senses, that sense will be adopted which will not lead to absurd consequences.' *Idem.*, 362.

" 'Words and phrases which might operate to defeat the clear purpose of a statute, or which would have no sensible meaning, should be eliminated; notwithstanding the rule that full effect must be given to every part of a statute.' *Idem.,* 420.

" 'Where it is manifest upon the face of an act that an error has been made in the use of words, the Court may correct the error and read the statute as corrected, in order to give effect to the obvious intention of the legislature.' *Idem.,* 421.

" 'In *Haney* v. *Smith,* 34 Ark., 463 ('Fifth' read 'Fourth') ; *Metropolitan Board of Works* v. *Steed,* 8 Q. B. D., 445 ('or' read 'nor') ; *People* v. *Hoffman,* 97 Ill., 234 (*'ad satisfaciendum'* read *'ad respondendum'*) ; *Joselyn* v. *Barrett,* 18 Ind., 128 ('acts' read 'act') ; *Moody* v. *Stephenson,* 1 Minn., 401 ('penal judgments' read 'final judgments') ; *Graham* v. *Charlotte etc. R. C. Co.,* 64 N. C., 631 ('venire' read 'venue') ; *Gould* v. *Wise,* 18 Nev., 253 ('on' read 'or') ; *Levering* v. *Philadelphia etc. R. Co.,* 8 W. & S. (Pa.), 459 ('or' read 'on') ; *Ex parte Hedley,* 31 Cal., 109 ('without' read 'within') ; *Chambers* v. *State,* 25 Tex., 307 ('provisions' read 'proviso') ; *Burch* v. *Newbury,* 10 N. Y., 374 ('first day of July' read 'first Monday in July') ; *Mankel* v. *U. S.,* 19 Ct. of Cl., 295 ('Lewis Mankel' read 'Louis Mankel'). In *Lancaster Co.* v. *Prey,* 128 Pa. St., 593, the word 'county' was corrected and read 'city.' Clark, J., speaking of the use of the word 'county' in the statute, said, "It is a mistake apparent on the face of the act which may be rectified by the context. In making this correction, we are not to be understood as correcting the act of the legislature. We are unable to carry out the intention of the legislature from the plain and obvious meaning of the context, in which the real purpose or intention of the legislature is manifest. It falls within the province of the courts to correct a merely clerical error in an act of the assembly, when, as it is written, it involves a manifest absurdity, and the error is plain and obvious.' " *Idem.,* 421.

" 'The power to make such correction is well established,

but is exercised only where the error is so manifest as to leave no doubt in the judicial mind as to the actual intent of the legislature.' *Idem.*, 422.

" 'The same principle applies to a statute under construction in this respect as to a deed or will. The evident intention will control the use of an inappropriate and senseless word. Construed with reference to the other sections of the act, none can doubt that the word which was intended to be used by the legislature was 'hereinbefore' instead of 'hereinafter,' and this construction is necessary to sustain the legislation.' *Waring* v. *Ry.*, 16 S. C., 425.

" 'The punctuation of a statute cannot be permitted to control the construction that is required by other and more weighty considerations.' Syllabus *Archer* v. *Ellison*, 28 S. C., 238, 5 S. E., 713."

We wish to state that in the last revision, to wit: the Civil Statute Laws of South Carolina, the word "of" has been stricken out and the word "or" has been substituted (see sec. 2852 of the first volume). We only mention this, not as an authority in this case, but as showing what the sense of the legislature as to these words was in the year 1903. We must hold, therefore, as we first announced, that in order to make full sense and avoid seeming inconsistency, it is necessary to substitute the word "or" for the word "of." Therefore, the exceptions of the appellant in this matter are overruled.

Section 194 of the Code of Civil Procedure is as follows: "The Court may, before or after judgment, in furtherance of justice and on such terms as may be proper * * * amend any pleading by inserting other allegations material to the case * * *" This power is broad and covers every case except in those instances where there is a failure to state a cause of action. The proper proceeding, where there is a defective statement of the cause of action because of uncertainty or indefiniteness, is not to demur in such an instance, but to move the Court to require plaintiff to make his complaint more definite and certain. Having held that the complaint in this case stated a cause of action,

however crudely or inartistically, it properly falls under sec. 194 of the Code. Again, we cannot hold that the plaintiff, as we have construed the complaint, failed to fall within one of the classes required in the act.

We have thus passed upon all the grounds of appeal taken by the appellant railway company.

It is the judgment of this Court, that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. JUSTICE GARY *concurs in the result.*