### 12355

#### ROBSON v. CANTWELL, CHARLESTON COUNTY SUPERVISOR, *ET AL.*

##### (141 S. E., 181)

1. STATUTES—COURT CONSTRUING ACT MUST SEEK LEGISLATURE'S INTENTION, AND IN DOING SO MAY DETERMINE CONTROLLING OBJECT OF STATUTE (ACT NOV. 23, 1927).—Court, in construing Act November 23, 1927, relating to bridge over Cooper River at Charleston, must seek intention of Legislature, and in doing so may inquire

as to controlling or moving object in enactment of statute and consider language and also commonly known facts and circumstances constituting history of project, with which it is assumed Legislature at time of passage of Act was familiar.

2. EVIDENCE—COURT TAKES JUDICIAL NOTICE THAT PROBLEM OF CROSSING WIDE RIVERS BY BRIDGES, TUNNELS, OR TUBES IS IMPORTANT QUESTION TO LARGE CITIES SEPARATED BY RIVERS FROM MAIN HIGHWAYS.—Court takes judicial notice that problem of crossing wide and deep rivers either by bridges, vehicular tunnels, or tubes is question of serious importance, especially to large communities or cities separated by such rivers from main highways of travel and thus cut off from free and full intercourse with outlying commuities.

3. EVIDENCE—IT IS COMMON KNOWLEDGE THAT NAVY YARD IS LOCATED UP COOPER RIVER FROM CHARLESTON, AND THAT RIVER ITSELF IS WATERWAY OF COMMERCIAL IMPORTANCE.—It is common knowledge that Navy Yard is located up Cooper River from Charleston, and that river itself is waterway of great commercial importance.

4. EVIDENCE—SUPREME COURT TAKES JUDICIAL NOTICE THAT FOR NUMBER OF YEARS STATE HAS BEEN ENGAGED IN CONSTRUCTING SYSTEM OF STATE HIGHWAYS.—Supreme Court takes judicial notice of fact that for a number of years State has been engaged in laying out and constructing system of highways with purpose to connect all principal cities and towns of State and at State lines to connect with principal highways of other States.

5. STATUTES—COURT WILL REJECT MEANING OF WORDS OF STATUTE WHICH WOULD LEAD TO ABSURD CONSEQUENCES (ACT NOV. 23, 1927). —Court in constructing Act November 23, 1927, to enfranchise Cooper River Bridge, Incorporated, to construct and operate bridge, tunnel, and tube over Cooper River, will reject meaning of words used in statute which would lead to absurd consequences by compelling an unnecessary or extravagant expenditure of money in construction and operation of all utilities mentioned if one would adequately meet object sought by Act.

6. STATUTES—REFERENCE COULD BE MADE TO TITLE OF STATUTE TO DETERMINE QUESTION WHETHER BRIDGE, TUNNEL, AND TUBE SHOULD BE CONSTRUCTED ACROSS RIVER (ACT NOV. 23, 1927).—In construing Act November 23, 1927, to enfranchise Cooper River Bridge, Incorporated, to construct and operate bridge, tunnel, and tube over Cooper River, reference could be made to title to determine question whether Act authorized construction of bridge only and use of word "over" in title tended to show that building of bridge

was conspicuous means to attainment of object and building of tunnel and tube only subordinate thought.

7. STATUTES—WHERE WORDS "AND" AND "OR" WERE USED LOOSELY IN STATUTE RELATING TO CONSTRUCTION OF BRIDGE, TUNNEL, AND TUBE, COURT COULD CHANGE "AND" TO "OR" TO EFFECTUATE LEGISLATURE'S INTENTION (ACT Nov. 23, 1927, §§ 7, 9).—Since title to Act November 23, 1927, reads "To enfranchise the Cooper River Bridge, Incorporated, to construct and operate bridge, tunnel and tube over Cooper River," and in first section of Act it is directed that County Supervisor shall enter into contract to construct "bridge, tunnel 'and' tube over and under Cooper River," and in Sections 7 and 9 words "tube, tunnel 'or' bridge" are used, words "or" and "and" being loosely used, Court could change "and" to "or" to effectuate Legislature's intention in determining question whether Act authorized construction of .bridge only.

8. BRIDGES—CONSTRUCTION OF BRIDGE ONLY HELD AUTHORIZED BY STATUTE RELATING TO CONSTRUCTION AND OPERATION OF BRIDGE, TUNNEL, AND TUBE OVER COOPER RIVER (ACT Nov. 23, 1927, §§ 2, 3, 5, 7, 9).—Construction and maintenance of bridge, without addition of tube or tunnel, over Cooper River connecting City of Charleston with State Highway No. 40, *held* within purview of provisions of Act November 23, 1927, in view of history of project; Section 9 providing "that no other contract * * * shall be granted * .* * for construction of tube, tunnel or bridge" for vehicular traffic across or under Cooper River, use of word "it" and "its" in Sections 2, 3, 5, 8, and loose manner in which words "and" and "or" are used in title and Sections 7 and 9.

In the original jurisdiction, December, 1927. Complaint dismissed.

Suit in the original jurisdiction of the Supreme Court for an injunction by John W. Robson against W: P. Cantwell, County Supervisor of Charleston County, and another.

*Mr. John C. Long,* for plaintiff, cites: *Privileges granted to a corporation construed against the corporation and in favor of the public:* 12 R. C. L., 194; 15 Wall., 500.

*Messrs. John I. Cosgrove* and *Logan & Grace,* for defendants, cite: *Where language of an Act is susceptible of two senses, that sense will be adopted which will not lead to absurd consequences:* 68 S. C., 565. *Construction of*

*Statutes:* 25 R. C. L., Par. 25; Id., 967; Id., 1097, Par. 265; 68 S. C., 554; 3 Sumn., 282; 86 S. C., 419; 67 S. C., 312; 102 S. C., 484; 112 S. C., 529. *Cases distinguished:* L. R. A., 1915-E, 165; 12 R. C. L., Par. 21; 144 U. S., 550. *No abuse of discretion on part of County Supervisor here:* 134 S. C., 402.

January 13, 1928.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action in the Original Jurisdiction of the Court for injunctive relief, and involves the construction of an Act of the Legislature, approved by the Governor November 23, 1927. The title of this Act is as follows:

"To enfranchise the Cooper River Bridge, Incorporated, to construct and operate a bridge, tunnel, and tube over Cooper River, and to charge certain toll thereon and limiting the period of the said franchise and provide for the purchase of the same by the State, its agencies or subdivisions."

On November 29, 1927, under the terms of the Act as construed by him, William P. Cantwell, as County Supervisor of Charleston County, entered into a contract with the Cooper River Bridge, Incorporated, by the terms of which it was agreed that the Cooper River Bridge, Incorporated, should construct and operate a bridge across the Cooper River, at Charleston. The plaintiff, a citizen and taxpayer of the State, brings this proceeding for the purpose of having the defendants perpetually enjoined and restrained from carrying into execution this contract.

He alleges, among other things, that he is informed and believes that the Cooper River Bridge, Incorporated, intends merely to construct a *bridge* over the Cooper River, and not a *bridge, tunnel, and tube* as provided for by the terms of the franchise granted it and specifically set forth in the Act; that the County Supervisor of Charleston County has en-

tered into a contract in writing with the said Cooper River Bridge, Incorporated, authorizing and empowering it to construct such bridge in violation of the provisions of the said Act; and that the plaintiff as such citizen and taxapyer will suffer irreparable harm and injury by the construction and operation of a bridge, instead of a tunnel, tube, and bridge as directed by the Act.

The defendant, Cantwell, as supervisor of Charleston County, in his answer alleges that he entered into the contract referred to by the plaintiff with the Cooper River Bridge, Incorporated, upon the advice of counsel, as being a compliance with and in no sense a violation of the provisions of the Act of the General Assembly; that he construes the provisions of the Act as intended to provide a means for vehicular traffic across the Cooper River; that in the execution of the contract he was but carrying out the intention of the General Assembly and was well within the terms of the Act; and that he had the choice of selecting one—bridge, tunnel, or tube—of the three means authorized by the Act, which choice he had exercised by selecting a bridge; and that by the construction and operation of such bridge, the plaintiff, with all the other taxpayers of the City of Charleston similarly situated, will be greatly benefited in many ways.

The defendant Cooper River Bridge, Incorporated, by its answer denies that the contract entered into by it for the construction and operation of the bridge over the Cooper River is in violation of the terms of the Act referred to; alleges that the object of the Act was to provide for vehicular transportation across or over the Cooper River, at Charleston, connecting with Route 40, one of the designated routes of the state highway system; that the use of the words "over Cooper River" in the title of the Act implies that a bridge rather than a tunnel or tube was to be the means of transportation; that the manner in which the words "and" and "or" are used in the Act indicates that

they were interchangeable in the minds of the Legislature; and points out that the word "or" is used exclusively in Section 9, which Section alone sets forth the object of the construction of a bridge, tunnel, or tube as being for vehicular traffic across or under the Cooper River and grants an exclusive franchise for a term of years.

The plaintiff insists that in the language of the Act, authorizing and empowering the supervisor of Charleston County, upon proper showing, etc., to enter into a contract with the Cooper River Bridge, Incorporated, "to construct a bridge, tunnel and tube over and under the Cooper River in Charleston County," etc., the words *tunnel and tube* "were used in the light of all the facts and circumstances of the situation, because the Legislature expected that a tunnel and tube, or a tunnel or tube, would have to be used under the channel."

The defendants say: "It would be reducing the Act to an absurdity to assume that its meaning was that the grantees of the franchise should build a bridge, a tunnel, and a tube as three separate utilities over and under the Cooper River;" and point out that the legislative intent can be arrived at only from an examination of the Statute as a whole, and that such intent, in the present case, is clearly shown to be as contended by them.

In view of these respective contentions, it becomes necessary, as stated, to examine and construe the Act in question.

In 36 Cyc., at p. 1102, it is said:

"By the construction of a Statute is meant the process of ascertaining its true meaning and application. For this purpose resort may be had not only to the language and arrangement of the Statute, but also to the intention of the Legislature, the object to be secured, and to such extrinsic matters as the circumstances attending its passage, the sense

in which it was understood by contemporaries, and its relation to other law."

In 25 R. C. L. at p. 956, we find:

"Ordinarily, the Legislature speaks only in general terms, and for that reason it often becomes the duty of the Court to construe and interpret a Statute in a particular case, for the purpose of arriving at the legislative intent, and of determining whether a particular act done or omitted falls within the intended inhibition or commandment of the Statute."

In 26 Am. & Eng. Ency. of Law, at p. 597, the writer says:

"The object of all interpretation and construction of Statutes is to ascertain and carry out the intention of the lawmakers, and when the intention is acertained it must always govern."

In *State v. Columbia Railway Gas & E. Co.,* 112 S. C., 528; 100 S. E., 355, the Court said:

"The purpose of construction is to find out the intention, however it may be expressed, whether in apt and technical words or otherwise; and that which is clearly implied is as good as if expressed. * * * The legislative intention must be gathered from the language of the Statute—not that found in any particular Section or proviso, but from the Statute as a whole—and it must be read in the light of all the circumstances, the situation and relation of the paries, the subject of the grant, and the purpose to be attained."

In *Crescent Mfg. Co. v. Tax Commission,* 129 S. C., 480; 124 S. E., 761, it is said (syllabus):

"Any ambiguity or inconsistency in a Statute will be resolved in favor of a just, equitable, and beneficial operation of the law."

See, also, *Stackhouse v. Rowland,* 86 S. C., 419; 68 S. E., 561; *Kaufman v. Carter,* 67 S. C., 312; 45 S. E., 211;

*Banks v. Columbia Ry. Gas & Electric Co.,* 113 S. C., 99;
101 S. E., 285.

In seeking the intention of the Legislature in our construction of the Act under consideration, we shall first inquire as to the controlling or moving object in the enactment of the Statute. In doing so we shall resort not only to the language of the Statute, but also to those commonly known facts and circumstances constituting a part of the history of the project, with which it is assumed the Legislature at the time of the passage of the Act was familair.

It is a matter of common knowledge, of which this Court takes judicial notice, that in this age of motor vehicular transportation the problem of crossing wide and deep rivers, either by means of bridges or by means of vehicular tunnels or tubes, is a question of serious importance, especially to large communities or cities separated by such rivers from main highways of travel, and thus cut off from free and full intercourse with outlying communities.

The City of Charleston for many years has been confronted with this problem, in the great need for adequate vehicular transportation connection, across the Cooper River, with the rich agricultural regions lying to the east and the great highway now known as State Highway No. 40. Numerous plans have been advanced in the past years for what was considered the only practicable type of bridge across the Cooper River—one that might invite private capital—a low-level bridge with opening draws in the side channels in the Charleston harbor. It is common knowledge also that the navy yard is located up the Cooper River and that the river itself is a waterway of great commercial importance; it is further noted that past efforts to have a low-level bridge built over the Cooper River were frustrated by the Federal Government and shipping interests, which definitely rejected any low-level bridge, it

being necessary, before any structure for vehicular transportation across or under the Cooper River could be built, to first secure the permission of the United States Government and other authorities for its construction and operation.

This Court also takes notice of the fact that for a number of years the State has been engaged in laying out and constructing a system of state highways, with a purpose to connect all the principal towns and cities of the State and at the State lines to connect with the principal highways of other states.

One of the highways designated in the state highway system is Route No. 40, which at the present time terminates on the eastern bank of the Cooper River opposite the City of Charleston. This highway is one of the oldest and most historic on the Atlantic Seaboard. It is the route known in Colonial days as the "King's Highway," and was "the route over which land communication was carried on by stagecoaches, toll bridges, and ferries between the metropolis of Charleston and points north and east."

The great importance of Route 40 in its traffic connection with Charleston is further shown by the fact that Charleston County has appropriated and expended a half million dollars recently in providing a ferry across the Cooper River, by which ferry connection Route 40 merges into all the great highway systems running south and west.

The defendants in their argument say:

"Taking into consideration the highway program of South Carolina and as a part of it the highly important Route 40, the wide gap that the Cooper River makes at Charleston, the great agitation running back over many years to find some way to negotiate this gap, and that in desperation the plans of even a low-level bridge were almost accepted many years ago and were stopped only by the action of the United States Government and the timely protest of the City of Charleston as to the effect on the harbor of a fence across it in the

form of a low-level bridge, with drawbridges as gates, there can be no doubt of the eagerness for this legislation. Cooper River was at once a great barrier to overland vehicular traffic into Charleston, while also the very life artery of Charleston's value as a port. If it could be crossed by a bridge over it or a tunnel or tube under it which would not hinder navigation, the long-desired ideal would be attained.

"Believing that traffic over Route 40 might not now, but would eventually, justify the ambitious and expensive plan of a high-level bridge, and because of its interest in the Isle of Palms, one of the premier beaches of the world, Cooper River Bridge, Incorporated, sought from the Legislature and received the franchise in controversy, accepting it without actually knowing until engineers were employed and plans and figures submitted, just what type of utility could best be built which would accommodate vehicular traffic across or under the Cooper River and satisfy all objections of government and shipping. It might have been necessary, as it seemed, to employ in whole or in part a tunnel, tube, or bridge, or, as the event has proved in the retrospect, it might be quite feasible, adopting the utmost and latest engineering skill, to erect something clearing all traffic in the nature of a suspension bridge, such as in several places span the East River at New York. With the great and growing importance of Route 40, and with the enormous amount of money that the State and the United States Government have spent upon that route and its connecting vehicular bridges, what the Legislature obviously had mainly in mind was to authorize Cooper River Bridge, Incorporated, to provide some satisfactory vehicular, instead of the unsatisfactory ferry connection between the terminus of Route 40 and the City of Charleston. What the franchise grantees had in mind was precisely the same thing: To obtain from the Legislature a right to establish this vehicular connection by a bridge primarily, if that proved altogether feasible

and possible, but if necessary to supplement it in part with a tube and/or tunnel. On both sides the intention was satisfactory vehicular connection."

These facts, assumed to have been known to the Legislature at the time of the passage of the Act, must necessarily have played an important part in its passage, and fully disclose, when taken with certain language of the Act to which we shall presently advert, that the controlling object in the enactment of the Statute was to provide adequate vehicular transportation, either over or under the Cooper River.

This object is indicated, in terms, in Section 9 of the Act, which provides "that no other contract or franchise shall be granted * * * for the construction of a tube, tunnel or bridge *for vehicular traffic across or under the said Cooper River."*

It would be absurd to assume that the Legislature, with this controlling object and all the attendant conditions in mind, intended to require the construction of a bridge "over" the Cooper River and at the same time the construction of a tube and tunnel "under" it for vehicular traffic. We agree with the contention of the defendants that to take such a view of the Act, in the clear light of its evident purpose, would be to reduce it to an absurdity, and such view is rejected by the Court.

In *Kitchen v. Southern Railway,* 68 S. C., 554; 48 S. E., 4; 1 Ann. Cas., 747, the Court said:

"There is a strong presumption against absurdity in a statutory provision; it being unreasonable to suppose that the Legislature intended their own stultification. So, when the language of an Act is susceptible of two senses, that sense will be adopted which will not lead to absurd consequences."

In the *Stackhouse case, supra,* we find the following language:

"However plain the ordinary meaning of the words used in a Statute may be, the Courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the Statute so as to escape the absurdity and carry the intention·into effect."

It is clear, moreover, that the Legislature had in mind the necessity of obtaining the permission of the Federal Government for the construction over or under the river of any utility for vehicular traffic before such work could be done.  It no doubt considered, in view of the past actions of the Federal Government, the possibility. of a refusal by that government to permit the construction of a bridge over the river, which would necessitate the building of a tunnel or tube under it.  With the possibility of such contingencies arising, known to the Legislature at the time of its consideration of the bill, we are satisfied that it was not the intention of that body to go into such matters as engineering designs, what form of structure might adequately meet the service demanded, etc., but rather to leave those matters to men of expert knowledge in such details and to indicate only its intention in an alternative way, as to the means by which the object sought might be attained.

In addition, it would be absurd to assume that the intention of the Legislature was to compel an unnecessary or extravagant expenditure of money in the construction and operation of all these utilities, if one of them would adequately meet the object sought by the Act; while, on the other hand, it is equally clear, in the light of the object sought to be accomplished, the contingencies to be met and overcome, the history of the project, past frustrated efforts— all known to that body—that the Legislature intended that only one of these utilities should be constructed, if it should

be found that only one would be necessary to serve the object intended.

Turning to the title of the Act in question, we find among its purposes:

"To construct and operate a bridge, tunnel and tube *over* Cooper River."

In 36 Cyc., 1134, it is said:

"Where the meaning of the body of the Act is doubtful, reference may be had to the title to remove the ambiguity or to supply an omission."

The use of the word "over" in the title of the Act tends to support the position of the defendants, that the building of a *bridge* "must be the conspicuous means to the attainment of the object, and the building of a tunnel and tube, only a subordinate thought."

Another fact tending to establish the intention of the Legislature as contended for by the defendants is the use of the words "it" and "its" in the Act, with reference to "tube, tunnel and bridge." In Section 2, with respect to the contract it is provided: "That the contract shall provide that the said tube, tunnel and bridge shall be so constructed that *it* will not interfere with navigation in Charleston harbor," etc.; in Section 3, with respect to obtaining permission of the United States Government, the following language is used: "To secure the permission of the United States Government and other necessary authorities for the building, construction, and operation of the said tube, tunnel and bridge, *its* approaches said terminals." etc.; in Section 5, with respect to the purchase of such utility by the State, these words are used: "Of the said tube, tunnel, bridge, *its* approaches," etc.; and in Section 8, with reference to the maintenance of the utility to be constructed, it is said: "The Cooper River Bridge, Incorporated, will maintain in the said tube, tunnel and bridge, *its* approaches and terminals," etc. The use of these words indicates that the Legislature

had in mind at the time of the passage of the bill that only
one utility would be constructed, as meeting adequately the
requirements for vehicular transportation across the Cooper
River.

The Court's attention is also directed to the "loose"
manner in which the words "and" and "or" are
used in the Act.  In the title of the Act, while it is
stipulated that a bridge, tunnel, *and* tube shall be built, it is
directed that whatever structure is built shall be built "over"
the Cooper River.  In the first Section of the Act it is
directed that the county supervisor shall enter into a con-
tract with the Cooper River Bridge, Incorporated, to con-
struct a 'bridge, tunnel *and* tube over *and* under the Cooper
River."  In Section 7, with reference to the matter of
collection of tolls, the words "tube, tunnel *or* bridge" are
used.  In Section 9 of the Act, as has been pointed out,
where the object is clearly indicated as being for vehicular
traffic, the words "tube, tunnel *or* bridge" are again used.

In 25 R. C. L., 977, we find:

"The popular use of 'or' and 'and' is so loose and so
frequently inaccurate that it has infected statutory enact-
ments.  While they are not treated as interchangeable, and
should be followed when their accurate reading does not
render the sense dubious, their strict meaning is more readily
departed from than that of other words, and one is read in
place of the other in deference to the meaning of the con-
text.  Whenever it is necessary to effectuate the obvious
intention of the Legislature, the Courts have power to change
and will change 'and' to 'or,' and *vice versa."*

In 36 Cyc., 1123, the writer says:

"Whenever necessary to effectuate the obvious intention
of the Legislature, conjunctive words may be construed as
disjunctive, and *vice versa."*

In the *Stackhouse case, supra,* this Court said :

"The cardinal rule that the Court should in all cases give effect to the obvious intent of the Legislature, and that every technical rule of construction should yield to the clear meaning of the Statute, is stated in Endlich on Stat., Inter., § 295.    Numerous cases in which clerical errors have been corrected by the Courts pursuant to this principle are given in Section 319 of the same work.

"This rule has been followed in many cases in this and other jurisdictions.    In *Waring v. Cheraw, etc., Ry. Co.,* 16 S. C., 412 [416], the word 'hereinafter' was read 'hereinbefore,' when the use of the former would have destroyed the manifest purpose of the Statute.    In *Kitchen v. Southern Ry. Co.,* 68 S. C., 554; 48 S. E., 4 [1 Ann. Cas., 747], the word 'of' was construed to mean 'or,' in order to give full effect to the meaning of Lord Campbell's Act.    In *Baldwin v. Travis County.* [40 Tex. Civ. App. 149] 88 S. W., 480, the word 'taxed' was substituted for 'attached,' the Court holding that the use of the latter word 'appears to be improper and inapt, in that it does not appear to definitely express or convey the meaning evidently intended by the Legislature.'    In *California Loan Co. v. Weis* [118 Cal. 489] 50 P., 697, it was held that the word 'July,' which was evidently intended, should be read instead of 'June,' which had been used in the Act under consideration.    In *Re Frey* [128 Pa., 593] 18 A., 479, the word 'city' was inserted instead of 'county,' when the Court was of opinion that 'the Section is senseless and absurd as it is written, while the purpose of the Legislature is perfectly obvious and certain.' "

We think that when consideration is given to the Act as a whole, the history of the project, the purpose for years sought to be attained, and all other related facts and conditions, past and present, the intention of the Legislature is clearly indicated as being to provide one utility for transpor-

tation over or under the Cooper River; and we have placed such construction upon the Statute as will effectuate the purpose of the legislative enactment.

By the provisions of the Act, the Legislature was careful, in granting the franchise, to fully protect the interest of the State. The work proposed to be done is one of the greatest public importance not only to the City of Charleston, but to the whole State. It is a project of great magnitude, involving a large expenditure of money, but this Court is satisfied that the benefits to be derived, in the passing years, from the full consummation of this long dreamed of project, in increasing prosperity, in intercourse made easy among the citizens of the State, and in the convenience resulting to the traveling public will far more than counterbalance any outlay of money or cost in the construction and operation of this utility so necessary and so much in demand. It has not been made to appear that the county supervisor has abused his discretion in the selection of the type of utility to be constructed, nor that the plaintiff or any of the taxpayers of the State will be made to suffer any loss or injury in the construction of the utility so selected.

Therefore this Court finds, and so holds, that the construction and maintenance of a bridge, without the addition of a tube or tunnel, over the Cooper River, "extending from some point on the western bank of the Cooper River included in the limits of the City of Charleston, to a point on the eastern bank of the said river opposite thereto and connecting with the state highway known as Route No. 40," is within the purview of the provisions of the said Act.

It is therefore ordered that the complaint be dismissed and the relief prayed for by the plaintiff be denied.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Blease and Carter concur.